**In re Liang–Houh SHIEH, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 97–BG–1991.**

District of Columbia Court of Appeals.

Argued Sept. 14, 1999.
Decided Oct. 7, 1999.

Hamilton P. Fox, III, Washington, DC, for respondent, by appointment of the Board on Professional Responsibility.

Michael S. Frisch, Senior Assistant Bar Counsel, with whom Leonard H. Becker, Bar Counsel at the time the brief was filed, was on the brief, for the Office of Bar Counsel.

Elizabeth J. Branda for the Board on Professional Responsibility.

Before TERRY, FARRELL, and RUIZ, Associate Judges.

FARRELL, Associate Judge.

Over a period of three years, respondent, a member of the Bars of California, New York, and the District of Columbia, "was at war with the courts, individual judges, his former law firms and attorneys who were his ex-employees." As a result, according to the California State Bar Court, he established himself as "the benchmark by which all vexatious litigants in the state of California will be judged." Concluding that "[n]othing the attorney discipline system can do will prevent respondent from continuing to abuse the legal system as a litigant, if he so chooses," the California court nonetheless determined that it must "at least prevent him from continuing his abusive course of conduct under the cloak of authority conferred

on him by his membership in the bar,"[1] and it recommended his disbarment. The Supreme Court of California disbarred him. New York followed suit reciprocally on the basis of the California order. The matter is before this court on reciprocal discipline,[2] specifically on the recommendation of the Board on Professional Responsibility ("the Board") that respondent *not* be disbarred but, rather, that he be suspended from the practice of law in the District of Columbia for two years and required to show fitness to resume practice. Bar Counsel objects to the downward departure from the sanction ordered by California. For his part, respondent contends that the manner in which California imposed discipline—in part by way of a default adjudication—violated due process, thus rendering its decision an invalid basis for reciprocal discipline. See D.C. Bar Rule XI, Sec. 11(c)(1).

We reject respondent's procedural challenge, and we order respondent disbarred. The Board agreed with Bar Counsel that respondent's "disregard for the administration of justice surpasses our disciplinary experience"; its refusal to recommend disbarment stemmed chiefly from what it

considered to be a lack of "unequivocal direction from th[is c]ourt" as to the proper sanction for conduct prejudicial to the administration of justice unaccompanied by other misconduct such as dishonesty or neglect of client affairs. If our decision that follows does not supply that direction for most, or even many, future disciplinary matters of this kind, it is only because respondent's abuse of the legal system in California may well be in a class by itself. *Not* to disbar him would defile that system and bring deserved discredit upon the authority by which he has been allowed to practice law.

## I.

The sheer volume of respondent's abusive filings and other sanctioned behavior makes synopsis of it in a few paragraphs impossible.[3] We therefore attach the State Bar Court's opinion hereto as an appendix. It reveals a history of lawsuits (many duplicative), frivolous motions (including for removal of cases to federal court and recusal of judges), meritless appeals,[4] and disobedience of court orders, resulting at one point in his conviction on

---

1. Each of the above three sentences quotes from the written opinion of the California State Bar Court. Each quoted passage includes internal quotation marks that are omitted here.

2. Technically, it is on reciprocal discipline from both California and New York, but, as we have noted, the New York disbarment was a reciprocal matter, not a *de novo* determination that respondent should be disbarred. Nevertheless, New York's defenses to the imposition of reciprocal discipline (*see* 22 NYCRR 806.19[c]) do not differ markedly from this jurisdiction's. It is therefore noteworthy that two states have found disbarment to be commensurate with the gravity of respondent's misconduct, and that—apropos of respondent's due process argument, *see* part II, *infra*—neither California nor New York has perceived a due process concern in the default basis partly underlying his disbarment by California.

3. The bare skeleton of the conduct is depicted in Bar Counsel's summary to the Board which the Board in turn adopted:

> The [California] State Bar Court concluded that Respondent had engaged in a series of acts that involved moral turpitude in that he deliberately violated court orders that were the subject of numerous contempt citations and sanction orders in civil litigation. He was found repeatedly to have filed and pursed baseless, vexatious litigation. He was sanctioned repeatedly for pursuing meritless, duplicative, frivolous motions and appeals. Further, he failed to report to the California Bar over $500,000 in sanctions imposed in the many lawsuits at issue. [Record citations omitted.]

4. As to a single 131–page document filed in just one of these appeals, the California Court of Appeals stated: "No attorney of reasonable competence could have thought this massive mountain of paper had any arguable merit whatsoever." *Say & Say v. Castellano,* 22 Cal.App.4th 88, 27 Cal.Rptr.2d 270, 273 (1994).

three counts of criminal contempt for which he escaped punishment by fleeing to his native Taiwan, where he remains a fugitive from justice in California. As the State Bar Court summed up:

> There was a pattern of repeated abuse of the judicial process and multiple acts of wrongdoing. Significant harm resulted to the many defendants involved in Respondent's vexatious litigation "war" who, because of Respondent's flight and concealment of assets, will never recover the sanctions and costs owed to them. The judicial system was stymied by Respondent's wasteful and meritless litigation, and he proceeded undeterred by enormous sanctions and stay orders. His actions were in bad faith and motivated by base and improper aims. His tactics as a whole are devoid of any consideration for the victims of his "war." He is defiant and unrepentant. [Citations omitted.]

## II.

 Respondent contends that the California proceedings resulting in his disbarment were "so lacking in notice or opportunity to be heard as to constitute a deprivation of due process." D.C. Bar Rule XI, § 11(c)(1). He cites the failure of the State Bar to serve him with the Notice to Show Cause (the initiating document equivalent to a petition for discipline under D.C. Bar Rule XI, § 8(c)) in Taiwan, including its failure to follow up after an unsuccessful first mailing or to engage process servers in Taiwan. The result of the failure to effect service, respondent argues, was that California treated him in default and so deemed the facts alleged in the Notice to Show Cause to be admitted. Moreover, it resulted in the absence of an evidentiary hearing and thus a disbarment entered without sworn testimony, itself, in respondent's view, a reason to disregard the California discipline. *See* D.C. Bar Rule XI, § 11(c)(2) ("infirmity of proof" grounds for refusing to impose reciprocal discipline); *In re*

*Williams,* 464 A.2d 115, 119 (D.C.1983) ("the hearing of evidence by the [Hearing] Committee was a legal prerequisite to its findings").

We begin by noting the obvious connection between the claimed failure to serve respondent and the fact, found by the California court, that six months earlier he had fled to Taiwan to avoid criminal sentencing and remained there at the time of the disciplinary proceeding. California had only a post office box in Taiwan as respondent's latest address shown in Bar records; and although he initiated phone calls to Bar officials from Taiwan, he refused to give them his telephone number. The express mailing to him with return receipt requested, sufficient under California law, was unsuccessful since apparently the box rental had been terminated. The Board here concluded that respondent had "either failed or refused to accept service." Although respondent contends there is no record support for this suggestion that he purposely avoided service, his flight from the jurisdiction provides support for the inference that that is indeed what he was doing.

In any case, we agree with the Board's rejection of respondent's due process argument because he had actual notice of the California disciplinary proceedings and adequate opportunity to appear and contest the charges. First, respondent concedes that he learned by telephone three months before the charges were filed of the State Bar's intent to file them if he did not resign. Certainly that provided him with an opportunity to learn the nature of the proposed charges and, perhaps more importantly, with notice of the need to insure that he received any subsequent written communications from the state Bar directed to him. Second, after the Notice to Show Cause was filed and he did not respond, the State Bar filed a written motion for entry of default which warned him that disbarment was being sought and that default would be entered unless he filed a timely response. Respondent does not

dispute that he learned of this default notice and did not immediately respond to it; instead he attempted to remove the proceedings to federal district court. Only when the federal court summarily remanded the case to the State Bar Court—a month after the default notice had been sent—was default entered, and by that time he still had not responded to the charges or taken steps to overcome his claimed ignorance of their nature. Finally, California law affords relief from an entered default upon a showing of (*inter alia*) reason for the failure to respond and an offer of proof of facts going to the merits and/or mitigation. Cal. State Bar Rule 203(c)(4). Although respondent moved to vacate the default, he made neither of these showings, as the State Bar Court found. Respondent simply has not demonstrated that he lacked notice of and a fair opportunity to defend against the disciplinary charges.

■ Neither are we persuaded by his argument that when the State Bar Court then proceeded on the basis of the default, the resulting absence of sworn testimony resulted in an "infirmity of proof" undermining the California discipline. D.C. Bar Rule XI, § 11(c)(2). The decisive consideration here, as the Board found, was that "[t]he State Bar Court based its decision on both the facts deemed to have been admitted by Respondent's default *and* on the additional documentary evidence submitted by the State Bar—65 binders of documentary evidence" (emphasis by the Board). Respondent argues that these documents—consisting in large part of public court records swollen with respondent's filings—could not answer the "central factual issue" of whether he, rather than the attorneys routinely representing him, should be held responsible for the abusive filings and other vexatious litigation tactics that resulted in discipline. That question, however, has been resolved against respondent over and over again by the California courts, which repeatedly sanctioned him individually—either apart

from and more seriously than his attorneys, or "jointly and severally" with them—for litigation abuses. The California Bar Court took special note of the "[t]hree tactics" by which respondent "direct[ed] his attorneys." And in August 1993 the California Court of Appeals had addressed this issue directly in holding respondent to be "a vexatious litigant" under California law (who therefore could be barred from filing new litigation without leave of court) despite the fact that he had appeared in both *pro se* and represented capacities:

> It is apparent from syntax, grammar, style and tone that, both in the trial courts and in this court, many—if not most—of the pleadings and other documents filed by Shieh or on his behalf have been written by the same person. This is the case even though Shieh has filed many of the initial pleadings in propria persona and then associated in co-counsel or substituted in a variety of replacement counsel, some of whom in turn become defendants in new litigation Shieh initiates. It is patently obvious that *every* writ petition, notice of appeal, appellant's brief and opposition to orders to show cause filed in this division has been drafted by the same hand, even though Shieh ostensibly has appeared in propria persona and through two separate attorneys . . . .

> In short, it is clear that Shieh does not engage attorneys as neutral assessors of his claims, bound by ethical considerations not to pursue unmeritorious or frivolous matters on behalf of a prospective client. *Rather, these attorneys who ostensibly "represent" Shieh serve as mere puppets.* [Emphasis added.]

*In re Shieh,* 17 Cal.App.4th 1154, 21 Cal. Rptr.2d 886, 895 (1993). Like the Board, "we do not see the need for sworn testimony as to [respondent's behavior], in the absence of any factual issues as to which sworn testimony might be necessary or

even relevant." [5] This court in *Williams*, on which he relies, was concerned about attorneys in disciplinary proceedings being adjudged culpable on "default judgments unsupported by proof." *Williams*, 464 A.2d at 119. We held there that, even though the attorney had not answered the specification of charges, the Hearing Committee "should have proceeded with an *ex parte* hearing to establish by sworn evidence that the . . . charges [were] true." *Id. See also, In re Pearson*, 628 A.2d 94, 98–99 (D.C.1993). No such infirmity existed here, where the State Bar Court took proper judicial notice of the countless filings and flouted court orders that made up respondent's misconduct.

## III.

■ Respondent was found to have violated, repeatedly, numerous ethical standards under California law. As the Board pointed out, a number of these provisions have no direct counterpart in District of Columbia law.[6] The Board thus concluded that, "in substance," respondent has been disbarred by California for behavior that violated Rule 8.4(d) of this jurisdiction's Rules of Professional Conduct, which makes it misconduct for an attorney to "[e]ngage in conduct that seriously interferes with the administration of justice." We agree with this characterization except that we believe the Board took inadequate account of one violation which California found: that respondent had committed repeated "acts of moral turpitude" (Cal. Bus. Prof.Code § 6106). The State Bar Court found moral turpitude revealed by respondent's defiance of criminal contempt proceedings instituted against him [7] and his repeated willful violations of court orders which, altogether, amounted to "a pattern of serious, habitual abuse of the judicial system." The Board disregarded this finding on the ground that " '[m]oral turpitude' is relevant under our Rules only to criminal convictions as to which disbarment is automatic under D.C.Code § 11–2503." [8] While that is strictly true, we are not willing to discount entirely for that reason California's judgment that respondent's habitual, bad faith misuse of the judicial process—resulting in several convictions for criminal contempt—was suffused with moral turpitude. At the least, that judgment reflects the magnitude and gravity of the interference with the administration of justice which California found, and to which we are bound to give deference. *Cf. In re Velasquez*, 507 A.2d 145, 147 (D.C.1986) (in reciprocal cases, court "grant[s] due deference—for its sake alone—to the opinions and actions of a sister jurisdiction with respect to attorneys over whom we share supervisory authority").

As we stated at the outset, the Board agreed with Bar Counsel that the magnitude of respondent's contempt for the administration of justice surpasses our disciplinary experience. Significantly, too, the Board agreed "with the general principle expressed [by Bar Counsel] that 'a fundamental lack of regard for the administration of justice' could justify disbarment in

---

5. We observe, moreover, that respondent's written argument to the Board never raised the point that testimony was needed to resolve the issue of responsibility.

6. These include "failing to report [to the Bar] substantial sanctions" (Cal. Bus. Prof.Code § 6068(*o*)(3)); "pursuing unjust litigation" (*id.* § 6068(c)); "commencing or continuing legal actions from a corrupt motive of passion or intent" (*id.* § 6068(g)); and failure to maintain "respect for courts" (*id.* § 6068(b)).

7. As the court stated:

Respondent did not submit to the contempt proceedings willingly. In fact, he had been at large for a number of months, was taken into custody pursuant to the court order, and appeared after posting bail. Respondent's failure to appear thereafter at his contempt sentencing, the forfeiture of his bail, and the current warrant for his arrest all corroborate his bad faith. This is clear and convincing evidence of moral turpitude.

8. And, as to these, it is only automatic in the case of felony convictions. *See In re McBride*, 602 A.2d 626, 635 (D.C.1992) (en banc).

an appropriate case." This, we hold, is that case in spades. As the State Bar Court concluded, over a period of three years respondent used the judicial system to carry on "war" with his perceived enemies by other means. Undeterred by legal sanctions and even criminal contempt, he filed suit after suit, motion after frivolous motion, and appeal after frivolous appeal,[9] in the process—as the California court wrote—"greatly harm[ing] individuals and the administration of justice" and ultimately neither "express[ing] ... remorse" nor exhibiting "any insight into his misconduct." Since filing lawsuits and related motions "lies at the heart of what lawyers do," *In re Goffe*, 641 A.2d 458, 465 (D.C.1994), it is largely beside the point that respondent abused the system in his own behalf and not a client's. Moreover, although he was not charged with "dishonesty" or "deceit," *see* Rule 8.4(c), he was found repeatedly to have filed lawsuits solely "to harass his opponents," and, given the magnitude of this abuse, the difference seems negligible.

The Board maintains that "[d]isbarment is a blunt instrument, a form of overkill, when entered against a lawyer who engages in vexatious litigation *as a party* out of a sense of wrong and injustice, however misplaced and unjustified" (emphasis by the Board). It reasons that other vexatious litigants who are not lawyers "will scarcely be deterred by disbarment of a lawyer"; that while vexatious litigants who are lawyers may be deterred, there are probably too few of them "to call for this remedy"; and that "[d]isbarment here will not deter Respondent" from continuing to file harassing lawsuits as a *pro se* litigant. The proper remedy, the Board suggests (together with suspension and the requirement to show fitness), lies in an injunction against filing suit without prior court approval, something California has done in respondent's case. *See Say & Say, Inc. v. Ebershoff*, 20 Cal.App.4th 1759, 25 Cal. Rptr.2d 703, 711 (1993).

We think the Board's emphasis on deterrence misapprehends why California disbarred respondent. Quoting from one of its previous opinions—whose conclusions it said were "no less true of Respondent"—the State Bar Court explained why deterrence was not the point:

> Respondent's repeated acts of moral turpitude demonstrate that he is no longer worthy of membership in the bar. Nothing the attorney discipline system can do will prevent respondent from continuing to abuse the legal system as a litigant, if he so chooses. But disbarring respondent will at least prevent him from continuing his abusive course of conduct under the cloak of authority conferred on him by his membership in the bar.

Ultimately, whether this court would disbar respondent on similar reasoning were this an original discipline proceeding is something we need not consider. In this matter of reciprocal discipline, he has not begun to persuade us by the required clear and convincing evidence that his misconduct warrants discipline substantially different than disbarment, D.C. Bar Rule XI, § 11(c)(4), or that adopting California's sanction would result "in grave injustice." *Id.* § 11(c)(3).

Accordingly, respondent Liang–Houh Shieh is disbarred from the practice of law in the District of Columbia. The sanction will become effective when respondent files an affidavit in compliance with D.C. Bar Rule XI, § 14. In the meantime he shall remain suspended.

*So ordered.*

### APPENDIX

### STATE BAR COURT
### STATE BAR OF CALIFORNIA
### HEARING DEPARTMENT—
### LOS ANGELES

---

**9.** The United States Supreme Court itself, on grounds of abuse of the certiorari process, has entered a conditional order barring prospec-

tive filings by respondent. *Shieh v. Kakita*, 517 U.S. 343, 116 S.Ct. 1311, 134 L.Ed.2d 464 (1996).

In the Matter of
LIANG–HOUH SHIEH,
No. 128034,
A Member of the State Bar.
Case No. 93–0–14106–EEB.

## INTRODUCTION

Liang–Houh Shieh, the Respondent in this matter, through his litigation in California state courts, federal courts, and the State Bar Court, may be considered, as one of his opposing attorneys characterized him, as "the benchmark by which all vexatious litigants in the state of California will be judged." As a result of his actions, the State Bar has charged Respondent with committing acts of moral turpitude, failing to report substantial sanctions imposed against him, failing to show proper respect for courts, pursuing unjust litigation, commencing or continuing legal actions from a corrupt motive of passion or interest, and engaging in actions which constitute an offensive personality. After reviewing this substantial record, the Court agrees with the State Bar that Respondent has engaged in serious misconduct, has greatly harmed individuals and the administration of justice, lacks any insight into his misconduct, expresses no remorse, and, based on the standards and case law, should be disbarred from the practice of law in California.

## PROCEDURAL HISTORY

The Notice to Show Cause in this matter was filed on December 30, 1994.[1] The Notice was served on Respondent by the State Bar at his membership records address on January 11, 1995. Respondent did not file anything with the State Bar Court in response to the Notice.

On March 9, 1995, the State Bar filed with the Court and served on Respondent a Notice for Entry of Respondent's Default for his failure to file a response to the Notice. The motion warned Respondent that the State Bar would be seeking his disbarment. The motion was served at Respondent's membership address.

Thereafter, Respondent attempted to remove the disciplinary proceeding to federal district court. By order filed April 10, 1995, the federal court found Respondent's removal petition defective and summarily remanded the case to the State Bar Court for further proceedings. On April 18, 1995, Respondent's default was entered pursuant to rule 200(c), Rules of Procedure of the State Bar.

On May 9, 1995, Respondent filed an *ex-parte* application for, among other relief, an order to vacate his default in this matter. On May 12, 1995, former State Bar Court Hearing Department Judge JoAnne Earls Robbins, the judge then assigned to handle this proceeding, issued an order indicating Respondent's motion had been filed but not properly served, and required Respondent to refile and reserve the motion before any response would be required from the State Bar. Thereafter, on June 7, 1995, the Court issued an order staying the disciplinary proceedings because Respondent had filed an appeal from the federal district court's April 10 remand order and Respondent claimed he had filed a second notice of removal in the federal district court. By order dated June 16, 1995, the federal district court struck from the record the second set of removal papers.

On December 21, 1995, Judge Wesley, then assigned to replace Judge Robbins as the hearing judge, issued an order lifting the June 7, 1995 stay. Thereafter on February 6, 1996, Judge Wesley granted the State Bar until March 1, 1996 to file its opposition to Respondent's motion to vacate the default. By order filed April 22,

1. Originally Respondent was charged in the Notice along with attorneys Richard R. Hopkins, and Henry M. Guy Rollins. Both Hopkins and Rollins are currently on inactive status. By Order dated December 22, 1995, former State Bar Court Hearing Department Judge David S. Wesley severed Respondent's case from the others.

1996, Respondent's motion to vacate the default was denied.

Respondent took Judge Wesley's April 22, 1996 order, among others, to the Review Department, on May 21, 1996 seeking interlocutory review. The Review Department took judicial notice of two orders of the United States Court of Appeals for the Ninth Circuit, one filed on June 2, 1995, and a second on October 13, 1995, denying removal of the case to federal court and remanding the matter to the State Bar Court. In its order denying, inter alia, Respondent's Petition for Interlocutory Review of the Motion for Relief from Default, the Review Department ordered that the State Bar Court would no longer accept from Respondent any further motions for relief from default or petitions for review of denials of such motions.

This case was assigned to this judge on May 1, 1996. On that same day, the State Bar filed its evidence in written form, waived the right to a hearing on the matter, and submitted the case on the admitted facts from the default, its trial brief and accompanying written evidence, constituting sixty-five binders of exhibits. The matter was submitted for decision on May 3, 1996.[2]

## FINDINGS OF FACT

Because of Respondent's default, the facts alleged in the Notice are deemed admitted. On that basis, no further proof is required to establish the truth of those charges. (*In the Matter of Hazelkorn* (Review Dept.1991) 1 Cal. State Bar Ct. Rptr. 602, 605 [1991 WL 126497].) The State Bar also submitted additional documentary evidence, to which Respondent is deemed to have waived any objection. (*Barnum v. State Bar* (1990) 52 Cal.3d 104, 110 [276 Cal.Rptr. 147, 801 P.2d 390].) The Court bases its findings of fact on both the deemed admissions and the additional evidence submitted.

*Jurisdiction*

Respondent was admitted to the practice of law in California on June 17, 1987, and has been a member of the State Bar at all times.

*Background*

Respondent is a native of Taiwan, and a graduate of Yale University School of Law. In the mid–1980's he worked at the law firms of O'Melveny & Myers and Gibson, Dunn & Crutcher. From June 1988 until April 1989, Respondent was a senior counsel in the firm of Graham & James. From April 1989 until January 1991, Respondent had been a partner at the law firm of Lewis, D'Amato, Brisbois & Bisgaard. Beginning in January 1991, Respondent was a partner at the law firm of Fulbright & Jaworski.

Respondent's partnership was terminated at Fulbright & Jaworski at the end of May 1991 amid much rancor. Among the issues in dispute was a lawsuit filed by Respondent which was then pending in Los Angeles County Superior Court against the law firm of Graham & James. Controversies also arose over which client files should remain at the law firm or be transferred to Respondent and Respondent's conduct while he was with the firm. As part of this dispute, Respondent filed an action, *Shieh v. Ebershoff et al.* (case no. BC0270441), in Los Angeles Superior Court, in which he unsuccessfully sought an injunction prohibiting Fulbright & Jaworski from communicating with his former clients. After a series of demurrers to successive versions of his complaints were sustained, Respondent dismissed the case while another demurrer was pending.

*The Ebershoff Federal Case*

After dismissing his state court action, in October 1991, Respondent filed a federal court lawsuit against hundreds of indi-

---

2. Respondent filed one motion for reconsideration on April 30, 1996 and nineteen Motions for Reconsideration on May 21, 1996. The State Bar filed its responses on June 19, 1996 and the motions for reconsideration were denied by orders filed July 12, 1996.

vidual attorneys and numerous law firms, alleging essentially the same causes of action raised in the state court action. On July 13, 1992, Federal District Judge William J. Rea heard argument by the defendant law firms on motions to stay the federal court action pending payment of costs of the prior state court action, and motions to dismiss the complaint for improper service and for failure to prosecute. The Court filed an order staying the proceedings pending payment of the costs of the prior state court action, and dismissing the action with prejudice against the defendants Lewis, D'Amato for improper service and for failure to prosecute. The Court declined to exercise pendent jurisdiction over Respondent's state law claims, and reserved the issue of Respondent's remaining RICO claims. The judgment was entered on August 5, 1992. By order entered August 31, 1992, Judge Rea dismissed Respondent's RICO claims with prejudice.

Respondent took two actions in response to the federal court action. On July 31, 1992, Respondent filed a 180–page lawsuit against numerous lawyers and law firms in Los Angeles Superior Court (*Shieh v. Ebershoff, et al.*, case no. BC061170), reiterating the causes of action against Lewis, D'Amato which had been dismissed with prejudice by the federal district court. (See *infra.*) Respondent also appealed the federal court orders to the United States Court of Appeals for the Ninth Circuit. In a memorandum filed December 30, 1993, the Court of Appeals affirmed all of the district courts orders, and by order filed March 28, 1994, denied the petition for rehearing and rejected the suggestion for rehearing.

By order entered January 15, 1993, the federal court set the costs of the prior state court action in the amount of $125,421.00 in favor of Graham & James and $37,236.00 in favor of the Fulbright & Jaworski defendants. On May 27, 1994, the federal defendants moved to dismiss the federal case with prejudice because Respondent had not paid the costs of the state court action. Respondent filed an opposition to the motion to dismiss on June 7, 1994, and in that motion requested reconsideration of the district court orders which had been affirmed by the Ninth Circuit. On June 20, 1994, the federal court dismissed the action and issued an order to show cause why Respondent and his attorney, James Andion, should not be sanctioned under Federal Rules of Civil Procedure, Rule 11 and 28 United States Code § 1927 for bringing an improper and frivolous motion for reconsideration. By order entered July 15, 1994, the Court found that Respondent opposed defendant's motion to dismiss on frivolous grounds' and requested reconsideration of an issue previously decided by the Ninth Circuit. It concluded that the opposition was "filed in bad faith, or at a minimum, with conscious disregard for counsel's duty to the court." It ordered that Respondent and his attorney, Mr. Andion, pay sanctions in the amount of $1,000.00 under Rule 11.

### Fulbright & Jaworski Lawsuit

As a result of their dispute with Respondent, on November 5, 1991, Fulbright & Jaworski filed a lawsuit (*Fulbright & Jaworski v. Liang–Houh Shieh, et al.*, case no. BC41515), alleging that Respondent and others had engaged in numerous tortious acts of misconduct during and after his employment with that firm. Counsel for Fulbright & Jaworski, the firm of Quinn, Kully and Morrow, noticed deposition of a number of third party witnesses who were purported clients of Respondent, beginning in January 1992. Respondent served objections to the depositions, stating that none of the individuals would attend the proposed depositions. Fulbright & Jaworski filed a motion to compel, and on February 25, 1992, Superior Court Judge Edward Kakita ordered Respondent and the other deponents to appear at their depositions. The depositions were noticed for April 2, 1992, and Respondent filed

objections and indicated that neither he nor the other deponents would appear. Fulbright & Jaworski filed another motion to compel, and on May 4, 1992, Respondent was ordered to pay sanctions of $1,500 to Fulbright for disregarding the court's February 25, 1992 order and for acting without reasonable justification.

A default judgment was entered on June 18, 1992, in favor of Fulbright & Jaworski. On September 11, 1992, Judge Robert M. Mallano found that this case was related to three other proceedings then pending in the Superior Court, *Shieh v. Christooher, et al.* (case no. BC054981), *Araiza v. Shieh, et al.* (case no. GC004191), and *Say & Say v. Castellano, et al.* (case no. BC059833), within the meaning of Los Angeles Superior Court local rule 1303.6. All the cases were assigned to Judge Kakita and the proceedings which flowed therefrom will be discussed *post.*

*Ebershoff State Court Proceeding*

a. *D'Amato demurrer*

As noted earlier, on July 31, 1992, Respondent filed a 180–page lawsuit against his former law firms and all the partners therein, as well as the law firms who had represented the defendant law firms in other actions filed by Respondent. (*Shieh v. Ebershoff, et al.* (case no. BC061170).) The complaint was served on Lewis, D'Amato by Respondent's counsel on December 4, 1992. On January 5, 1993, Lewis, D'Amato filed a demurrer and requested sanctions against Respondent and his counsel, contending that the state court complaint sought to assert claims and allegations which Respondent had raised in his prior federal action, which he was barred from relitigating after its dismissal with prejudice. Lewis, D'Amato sought sanctions from Respondent and his counsel claiming that pursuing the allegations and causes of action after they had been dis-

missed in federal court constituted frivolous and bad faith tactics within the meaning of Code of Civil Procedure section 128.5. In its pleading, Lewis, D'Amato noted that the allegations in the state complaint were word for word those alleged in the federal matter, down to misspellings and typographical errors.

On January 29, 1993, the trial court sustained the demurrer without leave to amend as to all claims against Lewis, D'Amato and imposed sanctions of $2,750 under section 128.5, finding that Respondent's actions were frivolous and without merit. Respondent filed a motion for reconsideration, which was denied and additional sanctions under Code of Civil Procedure section 1008(d) of $975 were ordered against Respondent and his attorney. The Court of Appeals affirmed the rulings in an unpublished opinion filed on March 7, 1995. Respondent has never reported these sanctions to the State Bar.

b. *Respondent Declared Vexatious Litigant*

As to the remaining defendants in *Shieh v. Ebershoff, et al.* (case no. BC061170), three groups of defendants[3] moved to have Respondent declared a vexatious litigant under Code of Civil Procedure section 391 and for an order requiring him to post a bond pursuant to section 391.1. After the filing of such a motion prior to trial, the litigation is stayed. (Code Civ. Proc, § 391.6.) Notwithstanding the pending motion and resulting stay, Respondent and his attorney filed on January 19, 1993 a motion to (1) request a continuance of the vexatious litigant hearing until Respondent had completed his discovery, (2) compel depositions of 32 of the defendants and production of documents, (3) stay defendants' discovery until the completion of his discovery, (4) award sanctions, and (5) order defendants to show cause re: contempt.

---

3. Graham & James and Jeffer, Mangels, Butler & Marmaro was one; Fulbright & Jaworski, Quinn, Kully and Morrow, Robert Toms, and Eric Lunquist was the second, and Sheppard, Mullin, Richter & Hampton the third.

At a hearing held on February 18, 1993 and by order filed March 16, 1993, the motions to declare Respondent a vexatious litigant were granted. The action remained stayed, and security was to be posted within 30 days or the Court would entertain a motion to dismiss. Respondent's motion was denied. The Court found that "the motion [was] frivolous and brought without substantial justification, . . ." and ordered that Respondent and his attorney be sanctioned, jointly and severally, and pay opposing counsel a total of $4,500. Respondent filed six motions for reconsideration, as well as requesting other relief from the Court. On March 22, 1993, the Court denied the motions for reconsideration with prejudice, found that the motions were frivolous and without justification, and ordered that Respondent and his attorney pay an additional $3790 in sanctions. In its ruling, the Court reiterated that the proceeding remained stayed as to all defendants until 10 days after Respondent provided the security ordered in the March 16, 1993 ruling.

On April 2, 1993, Respondent filed 12 motions seeking "vacation, clarification, modification, and reconsideration" of the Court's rulings on February 18 and March 22. New counsel for Respondent filed voluminous documents in support of the 12 motions. Further, on May 18, 1993, Respondent filed a voluminous first amended complaint, adding as a new plaintiff, Say & Say. This filing was in violation of the stay order issued on February 18 and reiterated in the March 22 ruling. On June 3, 1993, the Court denied the 12 motions, found that they were identical to the six motions for reconsideration previously denied, and that no new or different facts were alleged. It ruled that "the twelve Motions for Reconsideration were brought in bad faith and were frivolous, unnecessary and brought for purposes of delay." The first amended complaint was struck as well. The Court sanctioned Respondent and his attorneys, jointly and severally, a total of $4,810, to be paid by June 23, 1993.

In a separate order filed June 3, 1993, the Court found that Respondent had not filed the required security ordered on February 18, 1993, and therefore dismissed the action in its entirety with prejudice as to all remaining defendants. Respondent and Say & Say appealed the dismissal and the vexatious litigant determination to the Court of Appeals. The Court of Appeals dismissed Respondent's appeal on October 23, 1993, after finding he was subject to a prefiling order as a vexatious litigant in other proceedings (discussion *infra*) and after according him the opportunity to explain why his appeal had merit. The Court concluded that his appeal in the instant case was maintained for the purpose of harassment. (*Say & Say, Inc. v. Ebershoff* (1993) 20 Cal.App.4th 1759, 1761–1762 [25 Cal.Rptr.2d 703].) The Court also concluded that Say & Say, Inc., is an alter ego of Respondent which had been used by Respondent to circumvent the provisions of the vexatious litigant statute. Say & Say, Inc. would be held responsible for the acts of the individual who controlled it. The Court concluded that Say & Say, Inc. was a vexatious litigant. Rehearing was denied, as well as three petitions for review to the California Supreme Court. (*Id.* at p. 1770 [25 Cal. Rptr.2d 703].)

*Lawman Federal Court Lawsuit*

a. *Background*

Respondent employed attorney Francisca N. Araiza in March 1991 to represent him and his wife in litigation, including litigation involving his former law firm, Fulbright & Jaworski. By June 1991, a dispute arose; Ms. Araiza withdrew as counsel of record and left Respondent's employ. In August 6, 1991, Ms. Araiza filed in Los Angeles Superior Court a lawsuit against Respondent for, among other claims, wages owed to her. (*Araiza v. Shieh, et al.*, case no. GC 004191.)

Respondent responded by filing suit on December 6, 1991, in federal district court against Ms. Araiza, Bill Layman [Araiza's boyfriend], Gemma Sanchez [Araiza's sister], Imperial Savings, a savings and loan association, and Household Bank, a bank which had acquired Imperial Savings. (*Say & Say, et al. v. Layman, et al.*, civil action no. C–91–6690–JGD (TX).) The complaint asserts both state and federal causes of action arising from events which are alleged to have occurred in May and June 1991. The complaint charges Araiza with breaching her oral agreement to render legal services as assigned by Respondent, mishandling cases, cooperating with her codefendants to steal files and other property, and conspiring with Imperial Savings regarding funds held in a trust account in that institution. Respondent listed himself and Gary Hollingsworth as attorneys for the plaintiffs. Mr. Hollingsworth, then employed by Respondent, had urged Respondent not to file the federal lawsuit. Upon learning that his name was listed as attorney of record, Hollingsworth petitioned the court in late February 1992 to withdraw his unauthorized appearance as an attorney for the plaintiffs.

A copy of the summons and complaint in the *Layman* lawsuit were slipped under Mr. Hollingsworth's door on February 29, 1992, while he was away from home. Hollingsworth was not identified as a "Doe" defendant in the summons and complaint and the unsigned note which accompanied the documents indicated without naming Hollingsworth that suit had been filed by Say & Say and Respondent and that an answer should be filed. The complaint had not been amended at the time of this attempted service of Hollingsworth. The operative facts in the complaint occurred before Hollingsworth's employment by Respondent.

Another former employee of Respondent's, Andrew Castellano, received a copy of the summons and complaint in the *Layman* lawsuit in a similar attempt to serve him on February 29, 1992. A package of documents was left on Castellano's doorstep, containing the summons and complaint, the same general notice of suit, and a proof of service indicating personal service by hand to the offices of the Hollingsworth and Castellano. Castellano had worked for Respondent between December 30, 1991, and January 20, 1992. Upon quitting, Castellano filed a claim with the state labor commissioner for unpaid wages on January 22, 1992. Late in the evening on March 2, 1992, on the eve of a settlement conference on the wage claim, someone knocked on Castellano's door and left behind another package of documents, again including the summons and complaint in *Layman*, as well as a notice of taking Castellano's deposition as a defendant in the *Layman* case. The complaint was signed by Respondent on March 3, 1992, and was accompanied by an unsigned proof of service. Again, the complaint had not been amended at the time of the attempted service of Castellano and the operative facts in the complaint occurred before Castellano's employment by Respondent.

Araiza's attorney in the federal case noticed Respondent's deposition for January 29, 1992. Respondent then noticed Araiza's deposition for January 28, 1992, and argued that he had the right to complete her deposition before his commenced because she had refused without cause to complete her deposition in the state court action. Araiza and her attorney were present in Respondent's office for her deposition but Respondent refused to go forward or meet with Araiza or her counsel. Respondent claimed in a note offered by one of his staff that Araiza's attorney had failed to confirm their appearance by noon the prior day (the confirmation was faxed at 12:13 p.m) and refused to go forward with his noticed deposition the following day until the Araiza deposition was completed.

### b. *Sanction Order*

Araiza, Hollingsworth, and Castellano all filed motions to dismiss and for sanctions. Araiza requested as alternative relief an order compelling Respondent's attendance at his deposition. In an order filed April 14, 1992, Federal District Court Judge John G. Davies dismissed the motions of both Hollingsworth and Castellano as premature in light of Respondent's failure to amend the complaint to add Castellano and Hollingsworth and thereafter to serve them properly. However, the Court found that Respondent's attempts to serve Castellano and Hollingsworth and in opposing the motions were not taken in good faith and that his actions were "frivolous, unreasonable, and reckless, meriting the imposition of sanctions." On Araiza's motion, the Court compelled Respondent to give his deposition, warned that failure to comply could result in sanctions, including possible dismissal, and ordered sanctions of $2,490.50 payable to Araiza based on the Court's conclusion that Respondent had no legal or reasonable factual basis for his failure to cooperate in discovery.

On April 23, 1992, Respondent filed a motion for reconsideration of the sanction order. Responses were filed, and Respondent responded through counsel on June 2, 1992, with a pleading entitled "Plaintiff's Replies to Opposition to Motion for Reconsideration of Sanctions." In this document, Respondent asserted [4], among other charges, that Judge Davies was conspiring with counsel in other Shieh-initiated litigation then pending in federal court, Judge Davies was willing to be used by "white people against non-white people", Judge Davies was biased against Respondent as a non-white person and that his rulings reflect that bias. The Court combined this motion with a motion filed by Respondent on April 25, 1992 to dismiss his complaint without prejudice and to seal the record of the proceedings. By order filed June 9, 1992, the Court denied Respondent's motion for reconsideration and his motion to seal the record. The motion to dismiss was granted with prejudice. The Court did so because the state law claims had been dismissed on April 16, 1992, the federal civil rights claim had been dismissed on May 20, 1992, and the RICO claim was abandoned by Respondent. The Court also issued an order to show cause why Respondent should not be sanctioned under Rule 11 for filing the complaint in the first instance, and under 28 U.S.C. § 1928 for the memorandum filed on June 2, 1992. Respondent's counsel was also subject to the order because he signed and filed the June 2 memorandum.

Prior to the hearing on the order to show cause, Respondent sought to disqualify Judge Davies. His request was construed as a motion to disqualify and by order filed July 29, 1992, the motion was denied by Judge Richard A. Gadbois.

The hearing regarding sanctions was held on August 31, 1992, and an order issued the following day. In it, the Court found that Respondent violated Rule 11, which provides that the signatory of a document filed with the federal court represents to the Court that after reasonable inquiry, the document is well grounded in fact, warranted by existing law, and not interposed for an improper purpose. In this case, the Court stated

> An objective review of plaintiffs' complaint reveals the paucity of their federal claims. The allegations concerning civil rights and RICO are completely insufficient to support those causes of action. Plaintiffs admitted as much by failing to amend their civil rights claim and by failing to file a RICO case statement.

---

4. In its brief, the State Bar states in a footnote that James Andion, Respondent's attorney who signed this document, "contends that the document was changed after he signed it and was filed without his knowledge and con-

sent." The State Bar does not indicate where Mr. Andion has made this statement and whether it was under oath or under penalty of perjury.

Thus plaintiffs' complaint was not well grounded in fact nor warranted in existing law. The complaint was frivolous and was filed with this Court to harass, and to frustrate the progress of a state court action previously filed by Ms. Araiza.

The Court sanctioned Respondent $7500 for filing the complaint and ordered that Ms. Araiza and her attorneys be paid within 20 days.

As to the reply filed on June 2, 1992, the Court found that it contained inflammatory, disparaging, and uncivil remarks directed at the Court and opposing parties. For filing the reply in bad faith and for vexatious reasons, the Court sanctioned Respondent $2,500 as both a party and as attorney of record in the matter [5].

The district court's actions were affirmed by the U.S. Court of Appeals for the Ninth Circuit on December 29, 1993, Respondent's petition for rehearing was denied, and the suggestion for rehearing *en banc* was rejected. None of the sanctions were reported by Respondent to the State Bar.

*Ariaza State Court Action [Catellano case]*

After dismissal of his federal court action, *Shieh v. Layman, et al.,* in June 1992, Respondent filed an identical lawsuit in Los Angeles County Superior Court on July 15, 1992, *Say & Say, et al. v. Castellano, et al.* (case no. BC059833). As noted earlier, this case was found to be a related case to three others then pending in the Los Angeles Superior Court and it, along with the others, was assigned to Judge Edward Y. Kakita on September 11, 1992. Motions were filed by the defendants in all the cases to have Respondent declared a vexatious litigant, and to require Respondent to post security before proceeding further. While the motion was pending and a stay was in effect, Respon-dent attempted to serve another possible defendant and filed an amendment to his complaint naming another Doe defendant. After hearing on November 17, 1992, the Court found Respondent to be a vexatious litigant under Code of Civil Procedure section 391(b)(3) and (4), ordered Respondent to post bond in the amount of $100,000 each for the benefit of Araiza, Castellano, and Hollingsworth, stayed all proceedings in the case pending the posting of security, entered a prefiling order under section 391.7, prohibiting Respondent from filing any new litigation in California state courts without first obtaining leave of the presiding judge in the applicable court, and, finally, ordering Respondent to show cause why the lawsuits subject to the order should not be dismissed if security were not furnished by December 17, 1992.

Respondent filed a motion for reconsideration on December 1, 1992. On January 15, 1993, Respondent filed a motion to strike documents submitted in support of the vexatious litigant motion which had been granted on November 17. In fact it sought reconsideration of the vexatious litigant ruling, although the December 1 motion was still pending. It was filed after the statutory deadline for requesting reconsideration, was improperly served, and was set for the wrong department in superior court (in an attempt to have a judge other than Judge Kakita rule on it). On May 24, 1993, the motion was denied, and Respondent and his counsel were sanctioned $687.50.

*Christopher Litigation*

Respondent filed suit in federal district court on December 23, 1991, against two large law firms who had formerly employed him, O'Melveny & Myers and Gibson, Dunn, & Crutcher, along with all of the partners in the firms, a number of financial institutions, and an attorney who formerly represented Respondent, charging them with various state and federal causes of action, including RICO, wrongful

---

**5.** Respondent's counsel, James Andion, was also sanctioned $2,500 payable to the Clerk of the Court, as the attorney responsible for signing and filing the reply.

termination, invasion of privacy, breach of contract, and discrimination. The claims were voluntarily dismissed without prejudice by order filed May 7, 1992.

Respondent then filed the identical lawsuit in superior court on May 11, 1992 [6]. (*Shieh v. Christooher*, case no. BC054981.) As noted earlier, this case was reassigned, on September 11, 1992, to Judge Kakita along with a number of other Shieh-related lawsuits then pending in the superior court. On December 11, 1992, Respondent was declared to be a vexatious litigant in both the *Christopher* and *Castellano* cases, and the cases ordered stayed pending posting of security. Notwithstanding the stay, Respondent and his attorneys filed two motions to compel discovery, a motion for leave to file an amended complaint, and a motion for leave to file a second amended complaint. They commenced a new identical lawsuit in Orange County Superior Court on June 2, 1993 (*Say & Say v. O'Melveny and Myers, et al.* case no. 711620), the day before the dismissal motion was scheduled to be heard. The action was dismissed with prejudice on June 3, 1993, when Respondent failed to post the required security.

*Challenges to Judge Kakita*

a. *Superior Court Proceedings*

Respondent filed a peremptory challenge to Judge Kakita on November 18, 1992, which was rejected as untimely. Respondent then filed a "Notice of Related Case and Request for Replacement of Judge Kakita" on December 10, 1992. In a further statement of disqualification filed December 17, 1992, Respondent accused Judge Kakita of being in a conspiracy with and serving as the "instrumentality" of

opposing counsel. Respondent further alleged that as a conspirator, Judge Kakita was a witness in the actions pending before him; that Judge Kakita was brainwashed by one opposing counsel; and that his actions in the proceedings constituted obstruction of justice. On February 26, 1993, Assistant Presiding Judge Ted Millard denied the disqualification motion [7], finding that it was "wholly frivolous, a sham, and outrageous" and further found Respondent to be "a vexatious litigant whose campaign of litigation terror appears to accuse nearly every judge who has ever ruled against him of being 'biased' or a 'racist.'" Respondent was prohibited from filing any future challenges for cause unless be first sought and received approval from the presiding judge.

Respondent filed a petition for a writ of mandate with the Court of Appeals on March 15, 1993, which was denied on March 24, 1993. The Supreme Court denied review on April 21, 1993.

On March 16, 1993, Respondent filed with Judge Millard three motions for "clarification, modification and reconsideration" of his February 26 order. Judge Millard denied the motions by minute order filed March 22, 1993. On March 29, 1993, Respondent filed three more motions entitled "New and Supplemental Request for Clarification, Modification, and Reconsideration Re: Disqualification of Honorable Judge Kakita," which Judge Millard found to be identical to the motions filed and denied the week before. He found the new motions to be untimely, not supported by new facts, "frivolous, a sham, and outrageous." He struck them from the record and ordered that no further motions of

---

6. According to the Court of Appeals, many of these claims were the subject of two prior lawsuits filed by Respondent in superior court, *A. Shieh v. Michael Newman, et al.* (case no. NEC53509) and *L.C. Shieh v. David I. Thompson, et al.,* (case no. NEC54381). Respondent's appeals regarding the dismissal of those cases was pending in the Court of Appeals at the time of the filing of the *Christo-*

*pher* case in superior court. (See *In re Shieh, supra,* 17 Cal.App.4th 1154, 1162–1163 [21 Cal.Rptr.2d 886].)

7. Respondent filed two other disqualification challenges to Judge Kakita in two of the other related cases before Judge Kakita.

that type could be filed by Respondent without leave from the Presiding Judge.

Respondent filed a second petition for a writ of mandate with the Court of Appeals on March 30, 1993, again seeking review of his attempts to disqualify Judge Kakita. He added as new grounds that Judge Millard should have granted his requests for reconsideration. On April 9, 1993, the Court of Appeals issued an order to show cause why Respondent, his fellow plaintiffs, and Respondent's counsel should not be sanctioned for the filing of the second petition for writ of mandate. Respondent did not appear but his counsel filed a written response.

In an opinion filed June 30, 1993, the Court found the second writ petition to be untimely, repetitive, frivolous and part of a pattern of relitigating settled issues. In its view, "[T]here can be no reason for having filed the instant petition other than to cause respondents further unnecessary delay and expense." The Court sanctioned Respondent and his counsel $5,000 each. The Supreme Court denied review. These sanctions were not reported to the State Bar.

b. *Appeals of Vexatious Litigant Ruling*

While pursuing his effort to disqualify Judge Kakita, Respondent filed three different notices of appeal of the vexatious litigant ruling with the Court of Appeals. On September 9, 1993, defendant Hollingsworth moved for consolidation of the appeals and dismissal. Respondent's opposition to the motion to dismiss was voluminous but largely unresponsive. On December 2, 1993, the Court of Appeals ordered Respondent and his counsel to show cause why the appeals should not be dismissed and why they should not be sanctioned.

In the Court's opinion, in *Say & Say v. Castellano* (1994) 22 Cal.App.4th 88 [27 Cal.Rptr.2d 270], two of the three appeals were dismissed because there were no appealable orders or judgments rendered or entered within the scope of the notices of appeal filed by Respondent[8]. The Court found that there was an improper purpose for filing the notices: "[P]laintiffs typically file these notices of appeal from nonappealable orders immediately after the superior court indicates it is considering a course of action, and then contend that the court lacks jurisdiction to take the action considered due to the pending appeal or appeals." (*Id.* at pp. 92–93 [27 Cal.Rptr.2d 270].) As to Respondent's opposition to the motion to dismiss, the Court indicated that only one paragraph in its 131–page brief dealt with the appealability of the orders and one page discussed the issues raised in the dismissal motion. Instead, the Court found the opposition attempted to obscure the real issues and was wholly frivolous. In light of Respondent's failure to change his conduct after the imposition of lesser sanction awards, the Court imposed on Respondent a total of $50,000 in sanctions, all but $4,000 of which was to be paid to the Court of Appeals, Second Appellate District, and the balance divided among the defendants/movants[9]. Respondent has not reported these sanctions to the State Bar.

On February 14, 1994, Respondent filed a petition for rehearing of *Say & Say v. Castellano, supra,* 22 Cal.App.4th 88 [27 Cal.Rptr.2d 270], along with two other Court of Appeal orders. In his pleading, Respondent accused the justices of having colluded with and been corrupted by large

---

**8.** The third order was found to be appealable. The dismissal of the appeal was sustained on the grounds that in April and May 1993, just prior to filing the appeal, Respondent had been adjudged in contempt of court on three occasions and was not entitled to seek court assistance until the contempts were purged.

(*Say & Say v. Castellano, supra,* 22 Cal. App.4th 88, 94 [27 Cal.Rptr.2d 270].)

**9.** Respondent's counsel, James Andion, was also sanctioned a total of $50,000, on the same terms imposed on Respondent.

law firms, and of discriminating against him as a minority. The petition for hearing was denied without comment. (*Say & Say v. Castellano, supra,* 22 Cal.App.4th 88, 95 [27 Cal.Rptr.2d 270].)

*Sanctions in Christopher and Castellano Cases*

### a. *Sanctions in Christopher Case*

After motions were filed seeking to declare Respondent a vexatious litigant in the *Christopher* case, Respondent violated the automatic stay repeatedly and engaged in other improper litigation tactics. In response, the defendants filed two motions seeking sanctions. The first was filed on January 19, 1993, and was heard on June 28, 1993. In its order filed September 24, 1993, the Court found Respondent's entire action to be a sanctionable activity and noted, "this judge in more than 13 years of judicial service on this court has never seen more frivolous, bad-faith lawsuit and litigation tactics conducted solely for the purpose of harassment and unnecessary delay, . . . " By way of example, the Court noted seventeen specific acts by Respondent or his counsel which were grounds for sanctions. Included were Respondent's many frivolous disqualification motions against Judge Kakita, and Respondent's service of three sets of form interrogatories requiring responses from each of the 340 defendants, and two attempts to set depositions of party defendants—these latter filings all in violation of the automatic stay. The Court ordered sanctions against Respondent and his various attorneys, jointly and severally, in favor of defendants totaling $94,785.99. An additional $7,500 for the five violations of the automatic stay, was ordered payable to the superior court.

The second sanction motion in the *Christopher* case, filed July 21, 1993, was scheduled before Judge Kakita in November 1993. Before he could rule on the motion, he recused himself from the case because Respondent filed suit against him in federal district court. Thereafter the motion was combined with parallel contempt and sanction proceedings in the *Castellano* case. A multi-day hearing was held.

In *Christopher,* the Court filed a 64–page decision on May 31, 1994, addressing Respondent's actions clarify since January 19, 1993. Thirty specific findings were made by the Court[10], reflecting, among other matters, violations of the Court's stay order, frivolous and outrageous pleadings filed in attempts to disqualify Judge Kakita, documents filed with incorrect or backdated proof of service declarations, repeated pleadings seeking Judge Kakita's disqualification in violation of Judge Millard's order requiring leave of the Presiding Judge to file them, and numerous premature writs to the Court of Appeals to stymie actions in the superior court. The Court found that Respondent's actions were knowing, made in the face of numerous warning letters sent to his attorneys (and copied to him), and demonstrated Respondent's bad faith, particularly in Respondent's efforts to disqualify Judge Kakita. The Court found that Respondent was "at war" with the courts, individual judges, his former law firms, and attorneys who were his ex-employees. Three tactics were used primarily by Respondent in directing his attorneys. First, he moved between federal and state court when he felt that the judge in a given case was inclined to rule against him—dismissing the case in one court and refiling it in the other jurisdiction. Second, he filed peremptory challenges or recusal motions. Third, he filed premature notices of appeal. In his efforts to disqualify Judge Kakita, Respondent did not hesitate to accuse him of judicial misconduct without any basis in fact or law, but "as purely a vindictive matter." The Court ordered that Respondent be sanctioned $237,000 ($37,000 to the Los Angeles Superior Court and the rest to the defendants).

---

**10.** These are set forth in the State Bar's brief at pages 54–57.

His counsel were sanctioned lesser amounts.

### b. *Sanctions in Castellano Case*

On May 31, 1994, on the same day as the *Christopher* decision, the Court filed its 64–page decision and orders in the *Castellano* matter. As in *Christopher*, Judge Kakita had recused himself. Judge C. Bernard Kauffman heard the motion. The decision covered the period from August 20, 1992 through July 29, 1993. Unlike the *Christopher* case, there had been no prior sanction orders.

The Court found that in filing his lawsuit, Respondent acted from improper motives and a desire for malicious retaliation. Castellano was named in the suit because he had filed a wage claim and had secured sanctions against Respondent in the federal court action. Hollingsworth was targeted in retaliation for notifying the federal court that Respondent had improperly listed Hollingsworth as attorney of record in the federal court action, for obtaining sanctions against Respondent in the federal court action, and for filing a wage claim against Respondent. Ivy Yuen was named only because she was Hollingsworth's wife—and to further harass Hollingsworth. Wesley Rusch, another ex-employee, was sued because he made a wage claim against Respondent. Respondent sued Francesca Araiza because she had filed suit to prevent Respondent from using her name and for payment for legal work performed for him. The Court found that the superior court action was frivolous and intended to harass the defendants.

The Court found that Respondent's assertions that he was not acting *in pro per* were made with the intent to mislead the Court. Further, Respondent was found to be at all times in control of the litigation. Actions of his counsel were ratified by him. He had been warned as early as August 1992 about the risk of possible sanctions for continuing his frivolous lawsuit.

In pursuing their litigation goals, Respondent and his counsel violated both the automatic stay in effect after the first vexatious litigation motion was filed on September 3, 1992, and Judge Kakita's order of November 17, 1992, declaring Respondent a vexatious litigant and staying all proceedings until bond was posted. Activities such as serving several deposition notices and two sets of interrogatories, filing two motions to compel depositions and a motion to file an amended complaint, attempting to serve the complaint on Ivy Yuen during both stays, were grounds for the Court to conclude that Respondent and his attorneys had decided to ignore the stay order. Finally, all of Respondent's efforts to disqualify Judge Kakita were designed for the sole purpose of delaying the inevitable dismissal of the case.

The Court sanctioned Respondent a total of $122,749.35, plus costs. Again, Respondent's counsel were sanctioned in lesser amounts, with Respondent made jointly and severally liable. Respondent has not reported these sanctions to the State Bar.

*Contempt Proceedings*

These proceedings originated when Respondent failed to personally appear as ordered at a hearing on April 22, 1993, on a motion by defendant Ivy Yuen to have him declared a vexatious litigant. The Court issued an order to show cause re: contempt, returnable on June 28, 1993, based on Respondent's failure to appear, and violations of the stays. The Court identified three violations of the stay: a motion to compel discovery filed May 4, 1993, and a motion for leave to file first amended complaint filed May 12, 1993, both in the *Castellano* case, and a motion for leave to file a second amended complaint filed in the *Christopher* matter on April 27, 1993.

Although his attorney did file written opposition on his behalf, Respondent did not appear at the June 28 hearing. An attachment for default was issued for Respondent, and on July 19, 1993, bail was set at $100,000 for each of the *Christopher*

and *Castellano* matters. Respondent was taken into custody in February 1994, his motion to quash the attachment was denied, and he posted bail. A further order to show cause re: contempt was filed on February 10, 1994.

The contempt hearing was held on March 31, 1994. The Court found beyond a reasonable doubt that Respondent had notice of the Court's order, had the ability to comply with the Court's order, failed to comply with the Court's order, and that the failure to comply was willful. The Court found Respondent guilty of one count of contempt in the *Christopher* case and two counts of contempt in the *Castellano* case, and ordered him to appear for sentencing on April 21, 1994. Respondent did not appear for sentencing. His failure to appear and his disobedience of the Court's order were found to be in contempt of court, his bail was forfeited, and a bench warrant was issued for his arrest. Respondent remains at large.

### Bankruptcy Filing

In early 1994, Respondent filed for bankruptcy. In a filing with the Court, Respondent indicated that he did not recognize any of the decisions of the California state courts or the federal courts. He accused California judges generally of committing bribery, lying, and forging documents. The California Court of Appeal for the Second District was described as a "crime family" and a "Judicial Mafia." Specific judges were accused of being wholly owned and controlled by large law firms and derogatory descriptions of judges, opposing counsel, and witnesses were used throughout.

## CONCLUSIONS OF LAW

*Business and Professions Code section 6068(f)* [11] *[offensive personality]*

At the outset, the Court will dismiss the charges in counts two, three, and twenty-

one, that Respondent violated section 6068(f), consistent with the decision of the United States Court of Appeals for the Ninth Circuit in *U.S. v. Wunsch* (9 Cir. 1996) 84 F.3d 1110. The State Bar decided act to seek review of that decision in the United States Supreme Court. Since that decision, the State Bar has, in many pending cases, withdrawn charges of "offensive personality" under section 6068(f).

*Section 6106 [acts of moral turpitude]*

Section 6106 applies to Respondent's conduct, even if he acted in a private capacity and not as an attorney. (*Maltaman v. State Bar* (1987) 43 Cal.3d 924, 951 [239 Cal.Rptr. 687, 741 P.2d 185].) The State Bar argues three bases for finding Respondent culpable of committing acts of moral turpitude contrary to section 6106. The Court finds that the first two theories are sufficient to support violations of the statute.

Respondent is charged with deliberately violating court orders. These can be divided into two groups: those which were the subject of contempt citations (counts 15 and 19) and those included in the sanction orders (counts 4, 10, 16, 18 and 20). A contempt citation alone is not sufficient ground for attorney discipline. (*Maltaman v. State Bar, supra,* at p. 953 [239 Cal.Rptr. 687, 741 P.2d 185].) However, if circumstances establish "bad faith" disobedience, then discipline is warranted under section 6106. (*Ibid.*) Here, two of the three counts of contempt concerned Respondent's filing documents in violation of stay orders and in furtherance of what the superior court found to be unmeritorious and vexatious litigation. The third was for Respondent's violation of the court's order to appear at proceedings in which he was both party and attorney. Further Respondent did not submit to the contempt proceedings willingly. In fact, he had been at large for a number of months, was

---

**11.** Unless otherwise indicates, all references to section(s) are to the sections of the Busi- ness and Professions Code.

taken into custody pursuant to the court order, and appeared after posting bail. Respondent's failure to appear thereafter at his contempt sentencing, the forfeiture of his bail, and the current warrant for his arrest all corroborate his bad faith. This is clear and convincing evidence of moral turpitude.

Respondent's violation of court orders in the *Fulbright* case [count 4—$1500 sanction for disobeying court order to attend deposition without reasonable justification], *Castellano* case [count 16—numerous filings in deliberate disregard of stay order], and *Christopher* case [count 18—$7,500 sanction to court for 5 filings in violation of stay order; count 20—unspecified sanctions for numerous filings in deliberate disregard of stay order and order requiring leave of court] were all specified grounds for sanctions by the courts involved. In each instance Respondent was found to have acted in bad faith or without reasonable justification. However, in the *Ebershoff* state court action (count 10), the court struck the pleading filed in violation of the stay order but did not consider whether the filing constituted grounds for sanctions or was done in bad faith. The focus of the court's June 3 order in the *Ebershoff* case was Respondent's multiple, meritless motions for reconsideration of the vexatious litigant ruling, not violation of the stay. Therefore, the "bad faith" test required under *Maltaman* has not been met. (*Id.* at p. 951 [239 Cal.Rptr. 687, 741 P.2d 185].) We conclude that Respondent violated section 6106 in willfully disobeying court orders as alleged in counts 4, 15, 16, 18, 19, and 20.

Respondent was also charged in count 22 with engaging in a pattern of misconduct which, seen as a whole, amounted to moral turpitude. Unfortunately, count 22 read alone does not specify the acts or elements in Respondent's conduct charged

in the preceding 21 counts which support the finding of moral turpitude[12]. However, Respondent was informed by the charges in counts 4, 10, 15, 16, 18, 19, and 20 that his conduct in violating these orders involved moral turpitude. In these counts Respondent is charged with violations of numerous court orders. These violations were grounds for sanctions or contempt proceedings against Respondent, and together constitute a pattern of serious, habitual abuse of the judicial system consistent with a finding of moral turpitude. (*In the Matter of Varakin* (Review Dept.1994) 3 Cal. State Bar Ct. Rptr. 179, 186, 1994 WL 606153.) On this narrower ground, the Court finds culpability on count 22.

The State Bar also charges in count 21 that Respondent's filing of a bankruptcy pleading containing statements which were outrageous, demeaning, and slanderous to judges, opposing counsel, and witnesses was so serious as to amount to moral turpitude. Aside from citing cases where there is wide discretion in defining the term "moral turpitude," the State Bar has not provided any case law to support a finding of moral turpitude in this context. Coupled with First Amendment concerns in this area, particularly in attorney disciplinary proceedings (see *Standing Committee v. Yagman* (9 Cir.1995) 55 F.3d 1430, 1438–1442), we do not find clear and convincing evidence that such conduct constitutes moral turpitude under section 6106.

*Section 6068(c) [maintaining unjust litigation]*

Counts 1, 2, 5–14, 16, 17, 18, and 20 charge Respondent with violating his duty under section 6068(c) by repeatedly filing and pursuing baseless and vexatious litigation. This is confirmed by the designation of Respondent as a vexatious litigant in all the state court actions discussed in this proceeding. Further, in *Layman, Eber-*

---

**12.** An example of a proper notice pleading consistent with these charges was set forth by the Review Department in footnote 3, of its

opinion in *In the Matter of Varakin* (Review Dept.1994) 3 Cal. State Bar Ct. Rptr. 179, 186.

shoff, Castellano and Christopher, each court found that Respondent initiated frivolous and meritless lawsuits with no basis in fact or law. In the *Ebershoff, Castellano* and *Christopher* matters, Respondent was sanctioned repeatedly for pursuing meritless, duplicative, and frivolous motions and appeals. Culpability on these counts is amply supported by the record.

*Section 6068(g) [litigation pursued for corrupt motive or passion of interest]*

In count 24, Respondent is charged with violating section 6068(g), which provides that an attorney has a duty "[n]ot to encourage either the commencement or the continuance of an action or proceeding from any corrupt motive of passion or interest." The count does not identify the litigation at issue, but by incorporating counts 1 through 21 by reference, it can be read to charge that all the lawsuits discussed in the prior counts were pursued by Respondent for a purpose prohibited by the statute.[13] This charge is sustained by the record as a whole, as to every lawsuit filed by Respondent and covered by this disciplinary case. As discussed earlier, Respondent was sanctioned repeatedly for filing lawsuits to harass his opponents. Even in the two matters briefly discussed which were not subjects of a sanction order, *Shieh v. Ebershoff et al.*(case no. BC0270441) and the federal case against O'Melveny & Myers, et al, the subsequent history in both cases confirms that all Respondent's litigation against his former law firms and ex-employees was motivated by spite and vindictiveness, motives which run contrary to the statute. (*Sorensen v. State Bar* (1991) 52 Cal.3d 1036, 1042 [277 Cal. Rptr. 858, 804 P.2d 44].)

*Section 6068(o)(3)*

Respondent failed to report any of the over $500,000 in sanctions imposed in the many lawsuits at issue in this case.

*Section 6068(b) [respect for courts]*

There is ample evidence to support the charges in counts 4, 10, 15, 16, 18, 19, and 20 that by deliberately disobeying court orders, Respondent also violated his duty under section 6068(b) to maintain the respect due to the courts of justice and judicial officers. (*Maltaman v. State Bar, supra,* 43 Cal.3d 924, 951 [239 Cal.Rptr. 687, 741 P.2d 185].) Additional violations of the statute resulted from Respondent's campaign to disqualify Judge Kakita. As set forth in counts 5, 13, 16, 17, 18, and 20, it was, as Judge Millard characterized it "wholly frivolous, a sham, and outrageous." Judge Kauffman, in sanctioning Respondent for these tactics, concluded that Respondent acted in a purely vindictive manner in seeking Judge Kakita's disqualification.

As to the remaining charges under section 6068(b), these involve allegations that Respondent failed to show proper respect for judges by filing various pleadings which contained unjustified and demeaning allegations concerning judges and the judicial system. This kind of charge has been sustained in the past by the California Supreme Court in *Ramirez v. State Bar* (1980) 28 Cal.3d 402 [169 Cal.Rptr. 206, 619 P.2d 399], by a bare majority of justices. The dissent in that case, written by Justice Newman and joined by Chief Justice Bird and Justice Tobriner, discussed the First Amendment and free speech implications of the statute punishing attorneys for comments made demeaning the judiciary, issues which were studiously avoided by the majority. These principles have been discussed and applied more recently in a case previously cited, *Standing Committee v. Yagman, supra,* 55 F.3d 1430, in the context of the constitutional protections accorded to attorneys who make statements which impugn the integrity of the judiciary. While it may be instructive at some future date to compare and contrast these two cases in circum-

---

13. This argument as to adequate notice would be more difficult to sustain in the cases of Respondent's former co-respondents, who were not involved in all the lawsuits at issue.

stances where the outcome might have real import, this is not the case here. Therefore, the Court will dismiss these counts without prejudice.

## MITIGATING AND AGGRAVATING CIRCUMSTANCES

### Mitigating Circumstances

The only mitigating circumstance from the record is Respondent's lack of a prior record of discipline. However, under the Standards for Attorney Sanctions for Professional Misconduct, the absence of a prior record of discipline is mitigating only if coupled with misconduct which is not serious. (Standard 1.2(e)(i).) We find that Respondent's conduct was of a most serious nature such that standard 1.2(e)(i) does not apply.

### Aggravating Circumstances

We find that Respondent's misconduct is aggravated by clear and convincing evidence of numerous aggravating factors. There was a pattern of repeated abuse of the judicial process and multiple acts of wrongdoing (standard 1.2(b)(ii)). Significant harm resulted to the many defendants involved in Respondent's vexatious litigation "war" who, because of Respondent's flight and concealment of assets, will never recover the sanctions and costs owed to them. (Standard 1.2(b)(iv)). The judicial system was stymied by Respondent's wasteful and meritless litigation, and he proceeded undeterred by enormous sanctions and stay orders. (Ibid.) His actions were in bad faith and motivated by base and improper aims. (Standard 1.2(b)(iii).) His tactics as a whole are devoid of any consideration for the victims of his "war." (Standard 1.2(b)(vi).) He is defiant and unrepentant. (Standard 1.2(b)(v).)

### Standards

Under Standard 1.3, the purpose of State Bar disciplinary proceedings is to protect the public, to preserve public confidence in the legal profession, and to maintain the highest possible standards of conduct for attorneys. In cases of attorneys who commit acts of moral turpitude, standard 2.3 calls for imposition of actual suspension or disbarment depending on the harm to the victims, the magnitude of the misconduct, and the degree to which the acts relate to the member's practice of law. Standard 2.6 requires either suspension or disbarment, dictated by the gravity of the offense and the harm to the victim.

## DISCIPLINE RECOMMENDATION

In another case regarding an attorney unjustly defiant in the face of multiple contempt citations, the Supreme Court said, "Other than outright deceit, it is difficult to imagine conduct in the course of legal representation more unbefitting an attorney." (Barnum v. State Bar, supra, 52 Cal.3d 104, 112 [276 Cal.Rptr. 147, 801 P.2d 390].) Another attorney at war with the courts, Betsy Lebbos, was disbarred by the Supreme Court after it found that "[i]t is evident that [Lebbos] has no appreciation that her method of practicing law is totally at odds with the professional standards of this state." (Lebbos v. State Bar (1991) 53 Cal.3d 37, 45 [278 Cal.Rptr. 845, 806 P.2d 317].) Although the following quote described a different abusive litigant, Walter Alexander Varakin, his misconduct in pursuing four lawsuits is far outstripped by the magnitude and scope of Respondent's actions,

> Respondent's repeated acts of moral turpitude demonstrate that he is no longer worthy of membership in the bar. Nothing the attorney discipline system can do will prevent respondent from continuing to abuse the legal system as a litigant, if he so chooses. But disbarring respondent will at least prevent him from continuing his abusive course of conduct under the cloak of authority conferred on him by his membership in the bar. (In the Matter of Varakin, supra, 3 Cal. State Bar Ct. Rptr. 179, 191.)

These conclusions are no less true of Respondent. Respondent's disbarment is re-

quired under the case law, the Standards, the facts, and the equities.

### RECOMMENDED DISCIPLINE

Based on the foregoing, the Court recommends that Respondent, Liang–Houh Shieh, be disbarred from the practice of law in the State of California.

### COSTS

It is also recommended that the costs be awarded to the State Bar pursuant to Business and Professions Code section 6086.10.

DATED: <u>OCTOBER 10, 1996</u>

s/ <u>Eugene E. Brott</u>
Eugene E. Brott
Judge of the State Bar Court