In re Montgomery Blair SIBLEY, Respondent.

A Member of the Bar of the District of Columbia Court of Appeals (Bar Registration No. 464488).

No. 08–BG–372.

District of Columbia Court of Appeals.

Argued Oct. 15, 2009.
Decided March 11, 2010.

---

Montgomery Blair Sibley, pro se.

William R. Ross, Assistant Bar Counsel, with whom Wallace E. Shipp, Jr., Bar Counsel, and Judith Hetherton, Senior Assistant Bar Counsel, were on the brief, for the Office of Bar Counsel.

Before FISHER and THOMPSON, Associate Judges, and STEADMAN, Senior Judge.

THOMPSON, Associate Judge:

On March 7, 2008, the Supreme Court of Florida imposed upon respondent Montgomery Blair Sibley a three-year suspension from the practice of law in that jurisdiction, with his reinstatement conditioned upon a showing of fitness. The Board on Professional Responsibility ("the Board") has recommended that this court impose identical reciprocal discipline as to practice in the District of Columbia. Respondent contends that the presumption in favor of identical reciprocal discipline is overcome in this case, because the proceedings in Florida did not meet the requirements of due process and because there was an infirmity of proof to establish the charged misconduct. We conclude that respondent has failed to support his contentions with clear and convincing evidence, and we therefore adopt the Board's recommendation.

## I.

Under the terms of respondent's divorce-settlement agreement, which was incorporated into a court order of divorce,

upon his move from South Florida, respondent was required to pay his former wife $4,000 each month to fulfill his child-support obligation to their three children. Respondent left Florida in May of 2000 and moved to the District of Columbia. Thereafter, he failed to pay any child support for 25 months, falling $100,000 behind in his payments. On August 5, 2002, the Circuit Court for the Eleventh Judicial Circuit of Florida (the "Florida Family Court") issued an order requiring respondent to pay $30,000 of the past-due child support by October 1, 2002, $30,000 by November 1, 2002, and $40,000 by December 1, 2002, while also satisfying his ongoing child-support obligation of $4,000 per month. At a hearing on November 22, 2002, finding that as of that date respondent had failed to make any of the required payments, the court held respondent in civil contempt and ordered him incarcerated until he purged himself of contempt. The court notified the Florida Bar of the contempt finding.

In a separate matter, on November 3, 2004, the Florida Third District Court of Appeal ("the Third District") entered an order sanctioning respondent for filing "vexatious and meritless litigation." *Sibley v. Sibley*, 885 So.2d 980, 988 (Fla.Dist. Ct.App.2004). The court found that respondent had "repeatedly tried to re-litigate matters decided in earlier proceedings, without any legitimate basis to do so[,]" *id.* at 986, and had filed over three dozen non-meritorious appeals or lawsuits, including twenty-seven appellate proceedings in the Third District and "at least twelve actions in federal court against judges who have been assigned to his cases." *See id.* at 986, 987–88 & app. (cataloguing respondent's litigation history). The Third District Court order precluded respondent from any further self-representation in that court. *Id.* at 988.

On July 14, 2006, the Florida Bar filed a complaint against respondent, charging him with violating Florida Bar Rules 4–8.4(h) (willful refusal to pay a child-support obligation) and 4–3.1 (non-meritorious claims and contentions). The Supreme Court of Florida appointed a Referee to hear the matter. The Referee found that respondent had willfully failed to pay child support and had initiated meritless litigation, in violation of Florida Bar Rules 4–8.4(h) and 4–3.1, and recommended that respondent be suspended for three years. On March 7, 2008, the Supreme Court of Florida approved the Referee's report and ordered the recommended suspension (which, under Florida law, triggers a requirement to show fitness for reinstatement).

Respondent advised the District of Columbia Office of Bar Counsel of the Florida discipline, and Bar Counsel notified this court on April 11, 2008. On May 8, 2008, we suspended respondent on an interim basis and referred the matter to the Board for its recommendation as to whether we should issue a final order imposing identical reciprocal discipline, or whether a *de novo* disciplinary proceeding was warranted. In its Report and Recommendation dated November 14, 2008, the Board recommended that this court impose identical reciprocal discipline.

## II.

With regard to attorney-discipline cases that come to us as reciprocal matters, D.C. Bar R. XI, § 11(c) establishes a rebuttable presumption in favor of this court's imposition of discipline identical to that imposed by the original disciplining jurisdiction. *See In re Zilberberg*, 612 A.2d 832, 834 (D.C.1992); *see also In re Hallal*, 944 A.2d 1085, 1087 (D.C.2008). The presumption applies unless the party opposing discipline (or urging non-identical

discipline) shows, by clear and convincing evidence, that an exception should be made on the basis of one or more of the grounds set out in Rule XI, § 11(c)(1)-(5).[1] *In re Zdravkovich,* 831 A.2d 964, 969–70 (D.C. 2003). Rule XI, § 11(c) imposes a "rigid standard," as to which exceptions "should be rare." *Id.* at 968, 969. "[R]eciprocal discipline proceedings are not a forum to reargue the foreign discipline." *Id.* at 969.

### III.

Respondent argues that an exception is warranted in his case on the basis of Rule XI, § 11(c)(1) and (2). He relies on the following procedural history as the basis of his claims that the Florida proceedings were lacking in due process and that there was an infirmity of proof to support the Florida discipline.

During the proceedings before the Florida Referee, the Florida Bar filed a motion to strike the affirmative defenses that respondent raised in his answer to the Florida Bar Complaint.[2] Respondent asserts that the Referee granted the motion to strike "without affording [respondent] an opportunity to be heard in opposition."

The Referee also did not rule on a request by respondent for the issuance of subpoenas duces tecum to the Florida Family Court judge who held respondent in contempt and to five judges of the Third District, all of whom respondent sought to question about what he alleges were the "true motives" and the bias and hostility toward respondent that lay behind their orders adverse to respondent.[3]

The Referee explained in his final Report that, to schedule the final hearing, he left messages for respondent, seeking to identify a time when he would be available. Receiving no response from respondent, on March 28, 2007, the Referee issued an order setting April 16, 2007, as the hearing date. Respondent contends that the Referee never checked with him about his availability for a hearing, and that he did not receive the hearing notice until April 5, 2007. At that time, he asserts, he immediately made a motion to continue the hearing for two weeks or to appear by telephone, explaining that he would be unable to attend in person on April 16 because of a professional commitment (involving a high-profile case in the District). The Ref-

---

1. Specifically, Rule XI § 11(c) provides that "[r]eciprocal discipline shall be imposed unless the attorney demonstrates to the Court, by clear and convincing evidence," that:
 (1) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
 (2) There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusion on that subject; or
 (3) The imposition of the same discipline by the Court would result in grave injustice; or
 (4) The misconduct established warrants substantially different discipline in the District of Columbia; or
 (5) The misconduct elsewhere does not constitute misconduct in the District of Columbia.

D.C. Bar R. XI, § 11(c).

2. As affirmative defenses, respondent asserted his federal constitutional right to access to the courts and his interest as a parent in the custody of his children.

3. The Referee initially appointed to hear the matter denied respondent's first request for subpoenas duces tecum to compel depositions of the judges, ruling that a member of the judiciary "may not be compelled to testify regarding motivations behind his or her judicial actions," citing *United States v. Morgan,* 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed. 1429 (1941) (*"Morgan IV"*). The successor Referee did not rule on respondent's second request.

eree denied the motion for a continuance. Respondent contends that the Referee also denied his request to participate by telephone. There is no indication in the record that the Referee specifically ruled on respondent's request to participate by telephone, but the Referee's Report states that "Respondent failed to contact either the undersigned or counsel for the Florida Bar by telephone, facsimile, or electronic mail," and thus the "final hearing proceeded without the Respondent being present." Thereafter, both parties submitted proposed reports on April 20, 2007, and on June 28, 2007, the Referee issued his final Report. Respondent asserts that the Referee adopted almost verbatim the Florida Bar's proposed order.

The matter proceeded to review by the Florida Supreme Court. That court denied respondent's request to depose the Referee about what respondent alleged were factual misrepresentations in the Referee's Report. The Florida Supreme Court also denied respondent's request for oral argument and his motion to disqualify the justices of the court. The court adopted the Referee's Report and recommendation, and through a brief per curiam order, suspended respondent.[4] The court did not address the arguments that respondent raised in his petition for review: that he was denied a fair and impartial judiciary, that he was not put to charges made under oath, that he was denied the right to call and confront witnesses in his defense in a quasi-criminal proceeding, that his affirmative defenses were stricken improperly, and that he was being punished for having pursued federal and state court remedies.

## IV.

Citing the foregoing procedural history, respondent argues that he "was not given a full disciplinary hearing in Florida" and thus was deprived of due process. We begin our analysis by noting that the exception described in Rule XI, § 11(c)(1) requires clear and convincing evidence that "[t]he procedure [in the original disciplining jurisdiction] was *so lacking in notice or opportunity to be heard* as to constitute a deprivation of due process." (Emphasis added). Respondent claims a deprivation of due process on the basis of various purported deficiencies in the Florida proceedings, only some of which ostensibly relate to "notice" and "opportunity to be heard." We address respondent's arguments, however, generously construing them as arguments that he was entitled to, but deprived of, notice of properly brought charges and an opportunity to have his case heard without undue delay by qualified and impartial judicial officers. *See Boddie v. Connecticut*, 401 U.S. 371, 378–79, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) (explaining that due process requires "a meaningful opportunity to be heard"); *In re Day*, 717 A.2d 883, 886 (D.C.1998).

## A.

■ Respondent's first deprivation-of-due-process claim is that the Florida disciplinary proceedings were brought on the basis of unsworn allegations in the Florida Bar Complaint. Respondent argues that this contravened the principle, articulated by the United States Supreme Court in *Ex parte Burr*, 22 U.S. 529, 6 L.Ed. 152 (1824), that "the charges, in a regular complaint against an attorney, ought not to be received and acted on, unless made on oath." *Id.* at 530. However, this statement in *Burr*—which was dictum, *see In re Shepard*, 109 Mich. 631, 67 N.W. 971, 971–

---

4. The court also denied respondent's post-suspension motions to vacate the order of suspension and his motion for reconsideration of that denial.

72 (1896)—was followed by the Court's statement, in *Randall v. Brigham*, recognizing that

> It is not necessary that proceedings against attorneys for ... any unprofessional conduct, should be founded upon formal allegations against them.... All that is requisite to their validity is that, when not taken for matters occurring in open court, in the presence of the judges, notice should be given to the attorney of the charges made and opportunity afforded him for explanation and defence. The manner in which the proceeding shall be conducted, so that it be without oppression or unfairness, is a matter of judicial regulation.

74 U.S. 523, 540, 19 L.Ed. 285 (1868).

Further, in Florida, the common-law rule that a complaint against an attorney must be made under oath has been superseded by statute. As the Supreme Court of Florida held decades ago:

> [I]t is said that, "a complaint against an attorney ought not to be received unless made on oath," citing *In re Burr* .... This is a statement of the common law prior to the enactment of Chapter 4379, Acts of 1895.... There is no statutory authority which compels a State attorney to file his motion to disbar under oath.... While it was formerly the practice to require all pleadings of any kind whatever, both in equity and in law, to be under oath, the old technicalities of pleading are being done away with, and rightly so, including the elimination of the oath in most actions. In view of this tendency, and by reason of the absence

of statutory requirements, we cannot agree ... that a complaint against an attorney ought not to be received unless made on oath. The absence of an oath of the State attorney to a motion to disbar made under the statute is not ground for reversal.

*Richardson v. State*, 141 Fla. 218, 192 So. 876, 877 (1940).[5]

In addition, the Florida Bar Complaint was based upon court orders—the Florida Family Court order sanctioning respondent for failure to comply with child-support orders and the Third District order sanctioning him for "vexatious and meritless litigation"—that are a matter of public record. These were a constitutionally sufficient basis for the Florida disciplinary proceedings. *Cf. In re Calvo*, 88 F.3d 962, 967 (11th Cir.1996) (concluding that the state court could rely on judgments against petitioner in SEC actions as a basis for disbarment); *In re Shieh*, 738 A.2d 814, 817–18 (D.C.1999) (holding that there was no need for sworn testimony about whether respondent or his attorneys should be disciplined for abusive filings). For all these reasons, we reject respondent's argument that he was deprived of due process in Florida insofar as the Florida discipline arose from charges "not made upon oath."

**B.**

▮▮▮ Respondent also cites, as a due-process violation, the delay in the commencement and completion of the Florida disciplinary proceedings.[6] To amount to a

---

5. The relevant statute and rules in our jurisdiction continue to provide that attorney discipline must be based on "written charges, under oath" and that original-discipline proceedings must be "instituted by bar counsel by the filing of a petition under oath." D.C.Code § 11–2503(b); D.C. Bar R. XI, § 8(c). In reciprocal proceedings, however,

"a certified copy of a disciplinary order from another jurisdiction against a member of our bar" meets these requirements. *In re Richardson*, 692 A.2d 427, 430 (D.C.1997).

6. The Florida suspension, ordered in 2008, arose from a 2006 Florida Bar Complaint based on the 2002 Florida Family Court con-

denial of due process, however, a delay in the conduct of disciplinary proceedings must prejudice the respondent's defense. *See In re Ponds,* 888 A.2d 234, 241 n. 22 (D.C.2005) ("A delay coupled with actual prejudice could result in a due process violation...."); *In re Morrell,* 684 A.2d 361, 368 (D.C.1996) (same). Respondent has made no showing—let alone a showing by clear and convincing evidence—that the delay here prejudiced him in defending against the charges in Florida.

### C.

■ Next, respondent contends that the Florida suspension order is void, and that due process requires that this court not rely on the rulings of the Florida courts, because the Referee and the Florida Supreme Court justices were not a "competently constituted judiciary," in that they failed to take the loyalty oaths required by state law. We reject this argument because the Florida Supreme Court—the final arbiter of what is required under Florida law—has concluded that its justices and the Referee all satisfied the requirements of the Florida loyalty oath statute. *See Florida Bar v. Sibley,* 995 So.2d 346, 348–49 (Fla.2008), *cert denied,* —— U.S. ——. 129 S.Ct. 1348, 173 L.Ed.2d 615 (2009), (concluding that the Justices and Referee all took oaths "in full compliance with the dictates of section 876.05 [of the Florida statutes]" and rejecting respondent's interpretation of the statute). This court has

no basis for disagreeing with or disregarding that judgment.[7]

### D.

■ We next consider respondent's claim that he was deprived of an opportunity to raise and to be heard on the constitutional claims that he raised as affirmative defenses because the Referee granted the Florida Bar's motion to strike those defenses. This court has recognized that a motion to strike defenses should not be granted "if the insufficiency of the defense is not clearly apparent, or if it raises factual issues that should be determined on a hearing on the merits." *Franco v. National Capital Revitalization Corp.,* 930 A.2d 160, 166–67 (D.C.2007) (quoting 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1381, at 427–28 (3d ed. 2004) (footnotes omitted)). Respondent has suggested no reason why, under this standard and in light of the Florida Bar charges, it was improper for the Referee to strike his affirmative defenses. It is no defense to a charge of "vexatious and meritless" litigation that respondent has a constitutional right of access to the courts, because there is no right to access the courts to conduct vexatious litigation. *See Schlicher v. Thomas,* 111 F.3d 777, 781 (10th Cir.1997) ("The right of access to the courts is neither absolute nor unconditional, and there is no constitutional right of access to the courts to prosecute an action that is frivolous or malicious.") (quoting *Winslow v. Hunter,*

---

tempt order and the 2004 sanction order of the Third District. Respondent asserts that the delay "allowed the process to be the punishment." He also complains of a violation of his "speedy trial rights." However, "the Speedy Trial Clause of the Sixth Amendment to the Constitution simply does not apply" to attorney-discipline cases. *In re Sibley,* 564 F.3d 1335, 1340 (D.C.Cir.2009).

7. *See O'Brien v. Skinner,* 414 U.S. 524, 531, 94 S.Ct. 740, 38 L.Ed.2d 702 (1974) (recognizing that the Supreme Court may not "construe a state statute contrary to the construction given it by the highest court of a State"); *Sibley,* 564 F.3d at 1340 ("Because administration of the relevant oaths is a question of state law, this court cannot look beyond the controlling decisions of the Florida state courts.").

17 F.3d 314, 315 (10th Cir.1994)). In addition, respondent has not explained what factual issues his affirmative defenses raised, such that striking the defenses deprived him of an opportunity to present proof at the hearing before the Referee. And, in any event, respondent did have the opportunity to argue his asserted defenses in the proposed report that he submitted to the Referee and in his briefs to the Florida Supreme Court.

### E.

Another of respondent's due-process claims is that he was not permitted to confront his accusers, because the Referee did not grant his request for subpoenas to compel the testimony of the Florida Family Court judge and judges of the Third District who sanctioned him.[8] Although respondent suggests that his inability to obtain subpoenas implicates the Sixth Amendment Confrontation Clause, it is well-settled that there is "no confrontation right in an attorney discipline case." *In re Sibley*, 564 F.3d at 1341 (citing *Rosenthal v. Justices of the Supreme Court of Cal.*, 910 F.2d 561, 565 (9th Cir.1990) ("The confrontation clause is a criminal law protection. Therefore, it does not apply to a

disbarment case.")); *see also Calvo*, 88 F.3d at 967 ("Disbarment proceedings are not criminal proceedings, and ... there is no right to confront witnesses face to face.") (quoting *Fla. Bar v. Vannier*, 498 So.2d 896, 898 (Fla.1986)).

Nor does the Fifth Amendment "require a trial-type hearing in every conceivable case of government impairment of private interest." *Finfer v. Caplin*, 344 F.2d 38, 41 (2d Cir.1965) (quoting *Cafeteria & Rest. Workers, etc. v. McElroy*, 367 U.S. 886, 894, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961)); *Shieh*, 738 A.2d at 817–18 (explaining that "in the absence of any factual issues as to which sworn testimony might be necessary or even relevant," sworn testimony about the respondent's behavior is not required to ensure due process, and concluding that there was no need for sworn testimony about whether respondent or his attorneys should be disciplined for abusive filings) (citation and internal quotation marks omitted).[9] In this case, the Referee was "well within his discretion" in not permitting respondent to subpoena the Florida judges as witnesses, because the "integrity of [the] mental process of a judge cannot be subject to scrutiny."[10] *Sibley*, 564 F.3d at 1341 (citing

---

**8.** Respondent argues that this deprived him of the ability to question these judges about their alleged hostility toward him.

**9.** We noted in *Shieh* that the need for sworn testimony was obviated by the availability of "documentary evidence submitted by the State Bar—65 binders of documentary evidence" and "public court records swollen with respondent's filings" that evidenced the charged violations, and that the issue of whether the respondent was responsible for "abusive filings and other vexatious litigation tactics," had been "resolved against respondent over and over again by the California courts, which repeatedly sanctioned him individually ... for litigation abuses." 738 A.2d at 817.

**10.** Although acknowledging the "general rule which prohibits the deposition of judges," respondent relies on the Supreme Court's opinions in *Morgan v. United States*, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288 (1936) ("*Morgan I*"), and *Morgan v. United States*, 304 U.S. 1, 14, 58 S.Ct. 773, 82 L.Ed. 1129 (1938) ("*Morgan II*"). The cases involved a challenge to a rate order by the Secretary of Agriculture. Plaintiffs alleged that they were denied a full hearing before the Secretary where, at the time he signed the order, the Secretary "had not personally heard or read" any of the evidence or arguments presented and acted solely on the basis of information "derived from consultation with employees in the Department." *Morgan I*, 298 U.S. at 474 n. 1, 56 S.Ct. 906. The Supreme Court held in the first of the cases that the Secretary "should be

*Morgan IV,* 313 U.S. at 422, 61 S.Ct. 999).[11] Bar Counsel argues that respondent waived his right to call witnesses inasmuch as he failed to appear for the final hearing without sufficient cause. *Cf. In re Richardson, supra* note 5, 692 A.2d at 434 (holding that respondent waived his right to an evidentiary hearing when he chose to resign instead of continuing with the disciplinary proceedings). We are unwilling to conclude that there was an actual waiver since respondent notified the Referee of his conflict and unavailability and sought a continuance of the hearing. However, we agree with Bar Counsel that the Referee's refusal to grant respondent's motion for a continuance and the Referee's conduct of the hearing in respondent's absence did not amount to a denial of due process.

Respondent emphasizes that the Referee denied respondent's request for a two-week continuance to accommodate his pre-existing professional obligations, even though the mailed notice of hearing afforded respondent only ten days' notice of the hearing date, and even though the Referee had allowed the proceedings to move slowly and to drag on past the date initially set by the Florida Supreme Court for issuance of the Referee's Report. In some circumstances, a court's unreasonable refusal to grant a requested continuance may support a finding of deprivation of due process. *See In re Zdravkovich,* 831 A.2d at 969.[12] We cannot reach that conclusion here, because the only witnesses respondent indicates he wished to call at the live hearing were the judges whose mental processes he was not entitled to probe. Thus, respondent has not shown what he could properly have presented during the live hearing that he was unable to present in his written submission to the Referee.[13]

■ In addition, while respondent contends that the Referee denied his request to participate in the hearing by telephone, the record contains no evidence that the Referee would not have permitted telephone participation, and respondent does

required to answer [the] allegations," *id.* at 482, 56 S.Ct. 906, and the second opinion confirms that the Secretary thereafter answered interrogatories and gave testimony about his decision-making process. *See Morgan II,* 304 U.S. at 14, 58 S.Ct. 773. From this, respondent argues that the Florida judges were not immune from being questioned under oath about what they relied upon in sanctioning respondent.

What respondent fails to note is that in a subsequent *Morgan* opinion, the Supreme Court overruled its earlier opinions. As explained in *Nat'l Nutritional Foods Ass'n. v. FDA,* 491 F.2d 1141 (2d Cir.1974), in *Morgan IV,* 313 U.S. at 421–22, 61 S.Ct. 999, the Court "took back most or all of what the first decision had given," holding that "the short of the business is that the Secretary should never have been subjected to this examination." *Nat'l Nutritional Foods,* 491 F.2d at 1144 (stating that "[j]ust as a judge cannot be subjected to such a scrutiny, ... so the integrity of the administrative process must be equally respected" (citing *Morgan IV,* 313 U.S. at 422, 61 S.Ct. 999)). Thus, the authorities on which respondent so heavily relies do not support his claim that the Florida Referee denied him due process by not issuing subpoenas to the Florida Family Court and appellate judges to enable respondent to probe their mental processes.

11. For the same reason, we can find no deprivation of due process in the Florida Supreme Court's denial of respondent's request to depose the Referee about the mental processes that led him to recommend that respondent be suspended.

12. *But see In re Edelstein,* 892 A.2d 1153, 1158 (D.C.2006) (holding that an attorney is not deprived of due process, because, for whatever reason, he chooses not to appear at a scheduled hearing of which he had notice).

13. Thus, ultimately, it is irrelevant whether, as respondent claims, the Referee scheduled the hearing without attempting to contact respondent about convenient dates.

not claim that he attempted to call the Referee or Florida Bar Counsel to join the hearing by telephone. For this reason, too, respondent has fallen far short of providing clear and convincing evidence that he was deprived of a meaningful opportunity to be heard during the Florida disciplinary proceedings.

### F.

■ Respondent contends in addition that the Florida Referee's virtual verbatim adoption of the Florida Bar's proposed order, and the Florida Supreme Court's "perfunctory" adoption of the Referee's Report and recommendation, evidenced a lack of due process. For this argument, he relies on *Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). In *Anderson,* the Supreme Court did admonish against the verbatim adoption of proposed orders, *see id.* at 572, 105 S.Ct. 1504, but it did not declare that the practice is a violation of due process. To the contrary, the Court acknowledged that when a finder of fact adopts proposed findings of fact verbatim, the findings may be disturbed only if they are clearly erroneous. *Id.* Moreover, the Court's criticism of courts' "verbatim adoption of findings of fact prepared by prevailing parties" was particularly directed to instances where "those findings have taken the form of conclusory statements unsupported by citation to the record." *Id.*

Here, by contrast, the Florida Referee's Report was supported by references to Florida Family Court and Third District findings and orders that are a matter of public record.

### V.

We now turn to respondent's claim that there was an infirmity of proof during the Florida proceedings to establish the charged misconduct. The gravamen of respondent's infirmity-of-proof argument is that there was insufficient evidence before the Florida Referee to prove that his failure to pay child support was willful and that he filed frivolous claims and appeals. We disagree.

■ As to the Florida Family Court's contempt order for respondent's failure to comply with the court's child support orders, respondent takes issue with the court's finding, accepted by the Third District majority, that respondent's incarceration was warranted on the ground that he had access to funds from his wealthy father to pay the $100,000 back-child-support amount necessary to purge the contempt order.[14] Respondent's infirmity-of-proof argument might have some merit if the basis for the Florida discipline had been respondent's incarceration for failure to pay the *entire* purge amount in the absence of proof that his own assets were sufficient to allow him to do so.[15] But,

14. Respondent cites the dissenting opinion in which one judge of the Third District concluded that the record did not support a finding that respondent himself (as distinguished from his wealthy father) had the present ability to pay the $100,000 purge amount. *See Sibley,* 833 So.2d at 849 (Cope, J., dissenting). However, the dissent provides scant support for respondent's position here, because the dissenting judge also stated that "[t]he present record certainly supports the proposition that the former husband is intentionally underemployed and has divested himself of as-

sets which could have been used to pay his child support obligation," for which conduct "the remedy is indirect criminal contempt, not civil contempt." *Id.* at 853.

15. We make this tentative statement in recognition of the Third District's observation that respondent "adamantly refused to reveal many of his financial records," *id.* at 848 n. 2, and the Florida Family Court's finding that respondent produced "no paycheck stubs, no credit card statements, [and] no bank statements or tax returns." We would not neces-

strictly speaking, respondent was not disciplined in Florida for being held in contempt, but for willfully failing to pay court-ordered child support. Respondent does not dispute the Third District's observation that he paid none—"not a single cent"[16]—of the required child support. Likewise, he does not dispute the Florida Family Court's finding that he "has refused to pay even a small portion of his child support obligation" and also failed to "present[ ] an alternate payment plan" or the Referee's finding that he "failed to pay any of the outstanding child support." Nor has respondent given us any reason to question the Third District's conclusion that respondent's failure to support his children, "even in the smallest part ... stems ... only from a stubborn, self-immolating hatred of and vendetta against his ex-wife ... and not from any 'inability to pay.'" *Id.* at 849. Even if we questioned whether it was proper for the Florida Family Court to hold respondent in contempt, in light of these uncontested facts there is no basis for questioning the Florida Supreme Court's adoption of the Referee's finding that respondent willfully failed to meet his child-support obligation, in violation of Florida Rule 4–8.4(h).

 As to his claim of an infirmity of proof to support the Florida Bar's second charge, respondent asserts that "at *no* time were any of the pleadings filed by Sibley determined to be frivolous." We reject the distinction that respondent seeks to draw between "meritless" claims and "frivolous" claims. Respondent is correct that the Third District used the phrases "without merit" and "abuse of the legal process" to describe respondent's

successive appeals and lawsuits. But, to justify its sanctions order, the court expressly relied on case authority recognizing that an order barring further self-representation was warranted to "prevent[ ] abusive litigants from continuously filing *frivolous* petitions, thus enabling the Court to devote its finite resources to those who have not abused the system." *Sibley,* 885 So.2d at 985–86 (quoting *Lussy v. Fourth Dist. Court of Appeal,* 828 So.2d 1026, 1027 (Fla.2002) (citations omitted) (italics added)).

In concluding that respondent had filed non-meritorious claims, the Florida Referee (and the Florida Supreme Court, by adopting the Referee's Report) took notice of the Third District's catalogue of the twenty-seven appeals respondent filed in his divorce/custody case and the twelve actions he filed in federal court against judges assigned to his cases, and of the Third District's conclusion that respondent was an "unending source of meritless and vexatious litigation." Respondent contends this was an insufficient basis for discipline, because the members of the panel of the Third District who drew those conclusions "could not have made their determination that Sibley's cases were 'meritless' in the cases they were *not* empaneled to decide." However, the Third District panel explained that it "reviewed [the] files in all of the former husband's prior appellate proceedings" before entering its sanctions order. *Id.* at 990. Because "[a]ll judicial orders and judgments come with a strong presumption of regularity," *Democratic State Comm. v. Bebchick,* 706 A.2d 569, 574 (D.C.1998),[17] we

---

sarily decline to impose reciprocal discipline on the basis of an infirmity of proof where a respondent thwarted efforts to obtain documentary proof that was in his possession.

**16.** *Id.* at 848.

**17.** *See also White v. Reid,* 126 F.Supp. 867, 869 (D.D.C.1954) (citing the "presumption of regularity that judges obey the law and will protect fully the rights of the parties appearing before them and that judicial proceedings have conformed with due process of law").

have no basis to question the Third District panel's statement that it reviewed the files in respondent's appeals.[18] That review was a sufficient basis for the court to make a finding about whether respondent had brought non-meritorious litigation. *Cf. Shieh,* 738 A.2d at 814–16, 818 (concluding that judicial officers in the original disciplining jurisdiction "took proper judicial notice of the countless filings and flouted court orders that made up respondent's misconduct," and concluding that there was no infirmity of proof of respondent's disregard for the administration of justice, given his history of disobeying court orders and filing duplicative lawsuits, baseless motions and meritless appeals).

Respondent insists that the "bias and hostility of [the Third District] is well documented" and he asserts that he was deprived of the opportunity to demonstrate "that the judicial actors who entered the orders upon which the two counts of the Florida Bar Complaint are based were *not* relying upon the record before them." Given respondent's reference to the motions he has lodged to disqualify members of the Third District Court for alleged unethical behavior and his description of his role as counsel for an organization called "Florida J.A.I.L. 4 Judges," we would not be surprised if respondent is not well-liked by some judges in Florida. But that possibility does not enable respondent to avoid reciprocal discipline on the ground of infirmity of proof in the original disciplining jurisdiction. In light of respondent's admissions about his non-payment of even a small portion of his child-support indebtedness and in light of the public record of his successive litigation, this is a case in which we are satisfied, notwithstanding respondent's allegations of judicial hostility and bias, "that the critical questions presented, if retried, would bring the same determination"[19] as already reached in the Florida proceedings. Thus, we reject respondent's prayer that we refrain from disciplining him without according him "an evidentiary hearing on the unsworn allegations putatively lodged against him by the Florida Bar."

## VI.

Respondent has not shown by clear and convincing evidence that an exception to the presumption in favor of identical reciprocal discipline is warranted. Accordingly, we accept the Board's recommendation and suspend respondent for three years, with reinstatement conditioned upon a showing of fitness to practice law. For purposes of reinstatement, his suspension will begin to run from the date he files an affidavit in conformance with D.C. Bar R. XI, § 14(g).

*So ordered.*

---

**18.** And, even if we could substitute our own judgment for that of the Third District panel about whether respondent's repeated appeals lacked merit—and, to restate, that is something we may not do—respondent has made no effort to identify the purported merit in any of those appeals.

**19.** *Schwier v. Schwier,* 207 A.2d 115, 117 (D.C.1965).