*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-BG-564

FILED 8/4/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

IN RE NAREN CHAGANTI, RESPONDENT.

A Suspended Member of the Bar
of the District of Columbia Court of Appeals
(Bar Registration No. 464217)

On Report and Recommendation
of the Board on Professional Responsibility
(BDN-361-14)

(Submitted January 6, 2016                    Decided August 4, 2016)

*Naren Chaganti*, pro se.

*Wallace E. Shipp, Jr.*, Disciplinary Counsel, and *William R. Ross*, Assistant Disciplinary Counsel, for the Office of Disciplinary Counsel.

Before BECKWITH and EASTERLY, *Associate Judges*, and KING, *Senior Judge*.

PER CURIAM:      On October 28, 2014, the Supreme Court of Missouri determined that Respondent Naren Chaganti violated Missouri's Rules of Professional Conduct by improperly communicating with a represented party. The court suspended him indefinitely from the practice of law, adding that it would not entertain a petition for reinstatement for one year.

The District of Columbia Office of Disciplinary Counsel now recommends that we impose reciprocal discipline and suspend Mr. Chaganti for one year, with reinstatement conditioned upon proof of fitness to practice law.[1]  Mr. Chaganti concedes that D.C. Bar R. XI § 11 (c) generally obligates this court to impose reciprocal discipline, but he asserts he falls under four of the five enumerated exceptions to this rule.  Concluding that none of these exceptions applies, we suspend Mr. Chaganti for one year, with reinstatement conditioned upon proof of fitness.

## I.     Background

Mr. Chaganti's indefinite suspension from the Missouri bar stemmed from actions he took in a civil suit he filed against Lafayne Manse.  Mr. Chaganti sued Mr. Manse for breach of contract in relation to heating and cooling services Mr. Manse was supposed to provide to Whispering Oaks Residential Care Facility, a business Mr. Chaganti not only represented as an attorney but also managed and owned.  At various times throughout three years of litigation, Mr. Chaganti asked to talk directly with Mr. Manse, but in each instance, Mr. Manse's counsel,

---

[1]  Disciplinary Counsel asserts that this is "functionally identical to the discipline to that imposed in Missouri"; Mr. Chaganti has not argued otherwise.

Thomas DeVoto, refused to permit direct contact between his client and Mr. Chaganti. At one point, Mr. Manse tried to reach out to Mr. Chaganti directly, but Mr. Chaganti declined to speak with him and referred him to Mr. DeVoto. Whispering Oaks's complaint was ultimately dismissed for failure to prosecute. Immediately after the case was dismissed, while the parties were still at the courthouse, Mr. Chaganti indicated that he was certain he could resolve his dispute if only he and Mr. Manse could speak directly. Mr. DeVoto then reminded Mr. Chaganti that he still represented Mr. Manse in the matter, and that Mr. Chaganti still did not have permission to communicate with Mr. Manse. Mr. DeVoto also warned Mr. Chaganti that he would file a complaint with the Missouri Bar if Mr. Chaganti contacted Mr. Manse.

Mr. Chaganti ignored Mr. DeVoto's warning and, the following day, wrote a letter to Mr. Manse.[2] Mr. Chaganti informed Mr. Manse that he planned to refile the lawsuit and would add as a defendant Mr. Manse's employer, who apparently was unaware that Mr. Manse had independently contracted to do business with Whispering Oaks. Mr. Chaganti then advised Mr. Manse that he could avoid further litigation by discussing settlement, but he would have to "place a larger

---

[2] In the letter, Mr. Chaganti indicated that his contact was proper: "I could not contact you until the suit was dismissed in view that your attorney refused to permit direct discussion between us to settle the suit."

sum of money to settle than [Mr. DeVoto] has offered." Mr. Chaganti warned Mr. Manse that he "should think seriously whether it is in your best interests to go to court again or to close this matter at this time."

Mr. Chaganti was subsequently charged with violating two of Missouri's Rules of Professional Conduct: Rule 4-4.2 (communicating about the subject of the representation with a person known to be represented by counsel, without consent of counsel) and Rule 4-8.4 (d) (engaging in conduct prejudicial to the administration of justice). Mr. Chaganti appeared pro se before the state's Disciplinary Hearing Panel. The Panel issued a written decision concluding that Mr. Chaganti had violated Rules 4-4.2 and 4-8.4 (d) and recommending that he be suspended indefinitely with permission to apply for reinstatement after six months. The Missouri Supreme Court adopted the Panel's recommendation of indefinite suspension, but added that no petition for reinstatement would be entertained for one year.

After receiving notice of Mr. Chaganti's suspension in Missouri, this court suspended Mr. Chaganti and ordered him to show cause why reciprocal discipline should not be imposed. In response, Mr. Chaganti argued that he should not have been disciplined in Missouri and that this court should not impose reciprocal

discipline. Disciplinary Counsel filed a statement recommending reciprocal discipline.

## II. Analysis

When an attorney barred in the District is disciplined in another jurisdiction, this court "shall . . . impose[]" identical, reciprocal discipline, *see* D.C. Bar Rule XI, § 11 (c), (d), (e), unless an attorney opposing reciprocal discipline (or urging nonidentical discipline) shows, by clear and convincing evidence, that at least one of § 11 (c)'s five exceptions apply. *See In re Sibley*, 990 A.2d 483, 487-88 (D.C. 2010).[3] We have previously noted that these are narrow exceptions, the application

---

[3] Although this court has described Rule XI § 11 (c) as setting forth a "rebuttable presumption," *see, e.g.*, *In re Salo*, 48 A.3d 174, 178 (D.C. 2012) (citing *In re Meisler*, 776 A.2d 1207, 1207-08 (D.C. 2001)); *In re Sibley*, 990 A.2d at 487-88 (quoting *In re Zdravkovich*, 831 A.2d 964, 968-69 (D.C. 2003)), it seems more accurate to say that it sets forth a rule subject to exceptions. *See* BLACK'S LAW DICTIONARY (10th ed. 2014) (defining a presumption as a "legal inference or assumption that a fact exists, based on the known or proven existence of some other fact or group of facts"; defining a rule as "a general norm mandating or guiding conduct or action in a given type of situation"; and defining an exception as "[s]omething that is excluded from a rule's operation"). Similarly, our prior labeling of Rule XI § 11 (c) as a "rigid standard," *e.g.*, *In re Sibley*, 990 A.2d at 488, is somewhat confusing because, outside of its title "Standards for reciprocal discipline," the Rule contains no reference to or articulation of a standard. *See* BLACK'S LAW DICTIONARY (10th ed. 2014) (defining standard as a "criterion for measuring acceptability, quality, or accuracy"). Instead, it simply announces that

of which "should be rare," and that "reciprocal discipline proceedings are not a forum to reargue the foreign discipline." *See id.* at 488 (quoting *In re Zdravkovich*, 831 A.2d at 969-70). Whether one or more of these "rare" exceptions applies in Mr. Chaganti's case is a question of law or ultimate fact, and our review is de novo. *In re Salo*, 48 A.3d at 178.

Here, Mr. Chaganti opposes imposition of reciprocal discipline by invoking § 11 (c)'s first four exceptions:

> (1) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
>
> (2) There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusion on that subject; or
>
> (3) The imposition of the same discipline by the Court would result in grave injustice; or
>
> (4) The misconduct established warrants substantially different discipline in the District of Columbia.

D.C. Bar R. XI, § 11(c)(1)-(4). We review each exception in turn.

---

(. . . continued)
reciprocal discipline is the default, unless an attorney can demonstrate that an enumerated exception under the Rule applies.

## A. Deprivation of Due Process

Mr. Chaganti first argues that he was deprived of procedural due process in the Missouri disciplinary proceedings. As noted above, Mr. Chaganti must show by clear and convincing evidence that this exception applies. Moreover, as we review this claim we are mindful of the fact that "our responsibility in reciprocal discipline matters is not to sit in appellate review of the foreign disciplinary proceedings, in order to determine whether they conformed in every respect to local procedural and substantive law." *In re Morrissey*, 648 A.2d 185, 190 (D.C. 1994). "Rather, our function is to determine whether any serious defects were present in the foreign proceedings . . . such that it would be wrong to impose reciprocal discipline here." *Id.*; *see also Zdravkovich*, 831 A.2d at 969 (explaining that an attorney facing reciprocal discipline in the District "is not entitled to relitigate or collaterally attack the findings or judgment" of a foreign jurisdiction).

Mr. Chaganti concedes that he was given notice and a hearing in Missouri, but he contends that there were procedural defects in the hearing he received. In particular, Mr. Chaganti argues that the Disciplinary Hearing Panel improperly "quashed [a] discovery subpoena" directed to Mr. DeVoto "to examine whether there was extant attorney-client relationship between [Mr.] Manse and [Mr.

DeVoto]." Mr. Chaganti does not explain why he thinks his subpoena was improperly quashed, and we can discern no reason that it was. Indeed, although the Panel determined that the subpoena[4] "raise[d] some significant privilege and work product issues" under Missouri law (as it would under District of Columbia law),[5] it did not deny Mr. Chaganti's request outright; rather, the Panel issued an order directing Mr. DeVoto to bring his files to the hearing and gave Mr. Chaganti permission to inquire whether documents that he thought could help his defense were in those files. The Panel added that if such documents existed, it would review those documents in camera and determine if they should remain privileged or could be redacted and added to the record. Mr. Chaganti has not shown that he ever requested any particular documents, much less that the Panel denied production or refused to conduct in camera review.

Mr. Chaganti also argues that the Disciplinary Hearing Panel "permitted excerpts and self-serving documents to be used against [him]" while sustaining

---

[4] The subpoena requested "[a]ll documents, records, things, emails, text messages, and other recorded material . . . concerning or relating to . . . Naren Chaganti, Whispering Oaks, Lafayne Manse, Manse Heating & Cooling - between the periods 2009 until November 2013."

[5] *See Wallace v. Eckert, Seamans, Cherin & Mellott, LLC*, 57 A.3d 943, 959 (D.C. 2012) (affirming that documents prepared in anticipation of litigation are covered by work-product privilege and that the attorney-client privilege, D.C. R. Prof. Conduct 1.6 (a), can be used to prevent discovery).

"asserti[ons] [of] privilege [as] to the remainder of the subpoenaed documents," in violation of the rule of completeness, *see Henderson v. United States*, 632 A.2d 419, 424 (D.C. 1993). But again Mr. Chaganti fails to develop his argument; he never identifies any particular document that was partially admitted in violation of this rule.

Lastly, Mr. Chaganti argues that the Disciplinary Hearing Panel violated "[t]he rule against admitting self-serving documents" by admitting "a memorandum . . . created by attorney DeVoto, which was the only piece of evidence of [Mr. DeVoto's] alleged discussion with [Mr. Chaganti], other than [Mr. DeVoto's] own conflicting statements."[6] Mr. Chaganti asserts that this memorandum "was created for the purpose of helping the disciplinary proceeding, and on this point, Missouri law was crystal clear that it was neither admissible nor a 'business record.'" But he provides us with no support for his assertion that Mr. DeVoto prepared the memo for this purpose, and Mr. DeVoto testified before the Panel that he dictated the memo on the day Mr. Chaganti's case against Mr. Manse

---

[6] This memorandum memorialized the conversation Mr. DeVoto had with Mr. Chaganti after the lawsuit had been dismissed. It noted that Mr. Chaganti asserted "a right to contact [Mr. Manse]" because "the case [had been] dismissed" and Mr. DeVoto "no longer represent[ed] [Mr. Manse]." It also noted that Mr. DeVoto "repeatedly told Mr. Chaganti" that he did not have permission to contact Mr. Manse.

was dismissed (the day before Mr. Chaganti wrote his letter to Mr. Manse prompting disciplinary proceedings).

Thus, Mr. Chaganti has failed to show that his due process rights were compromised because of a denial of access to documents.

## B. Infirmity of Proof

Noting that his disciplinary rule violation in Missouri was proved only by a preponderance of the evidence, Mr. Chaganti argues that the evidence presented to the Disciplinary Hearing Panel would not have satisfied the District's more stringent "clear and convincing" standard of proof. This court has held, however, that there is no automatic "infirmity of proof" in a reciprocal disciplinary case where the original jurisdiction uses a standard of proof lower than clear and convincing evidence. *In re Benjamin*, 698 A.2d 434, 440 (D.C. 1997). To the contrary, "[u]nder principles of collateral estoppel, in reciprocal discipline cases we generally accept the ruling of the original jurisdiction, even though the underlying sanction may have been based on a different rule of procedure or standard of proof." *Id.*

Mr. Chaganti acknowledges *Benjamin* but asserts that "[t]here is . . . reason to depart from the *Benjamin* ruling in this case because here the entirety of the 'proof' of violation is based not on any objective (undisputed) evidence but on oral testimony of an adversary who had litigated a case for years." Mr. Chaganti misdescribes the record; the evidence against him did not consist of the testimony of a single witness. In addition to testimony from both Mr. DeVoto and Mr. Manse, the Disciplinary Hearing Panel relied on Mr. Chaganti's own letter to Mr. Manse. This evidence supported the Panel's determination that Mr. Chaganti contacted a represented party, Mr. Manse, about the subject of the representation and "sought to intimidate [him] by threatening to join his employer as a defendant when [Mr. Chaganti] re-filed the litigation." Repeating arguments he made before the Panel,[7] Mr. Chaganti seeks to challenge these findings, but we decline to consider his arguments, "as they constitute an attempt to re-litigate the facts already determined in [Missouri]." *See In re Gallagher*, 886 A.2d 64, 69 (D.C. 2005).

---

[7] In addition to arguing that Mr. Manse was not represented or that he did not know he could not talk to Mr. Manse, Mr. Chaganti argues that "Missouri permits parties to communicate with each other." We decline to wade into the proper application of Missouri's Rules of Professional Conduct. The Disciplinary Hearing Panel found that Mr. Chaganti was acting as Whispering Oaks's attorney, not as a party to the suit, and we will not revisit that finding.

## C. Grave Injustice

Mr. Chaganti next argues that imposition of reciprocal discipline would constitute a grave injustice. Because this court has yet to grant relief under this exception, its contours are not clearly defined. We are confident, however, that Mr. Chaganti's case is not an example of grave injustice. Mr. Chaganti asserts that his letter to Mr. Manse "was an innocuous settlement invitation, made in good faith," but the Disciplinary Hearing Panel found otherwise, and we again reject Mr. Chaganti's attempts to relitigate the Panel's findings. Mr. Chaganti also argues that this was a single incident and he had no warning of the severity of the consequences. But these arguments ring hollow where the Disciplinary Hearing Panel found that Mr. Chaganti had contacted Mr. Manse only a day after Mr. DeVoto both told Mr. Chaganti that he did not have permission to speak with Mr. Manse and warned Mr. Chaganti that he would report him to the Bar Association if he contacted Mr. Manse.[8]

---

[8] We also reject Mr. Chaganti's cursory attempt to challenge Missouri's chosen discipline. Mr. Chaganti notes that the Disciplinary Hearing Panel recommended only a six-month suspension, and that the Missouri Supreme Court's "escalation of the sanction appears punitive." But he fails to explain why it was improper for the Missouri Supreme Court to make the final determination regarding the appropriate sanction or why it would be improper for the sanction to "appear punitive."

Mr. Chaganti further argues that mitigating circumstances militate against the imposition of reciprocal discipline. Apart from arguing that this is his first disciplinary violation and that other jurisdictions have declined to impose reciprocal discipline (arguments we find unconvincing and irrelevant, respectively), Mr. Chaganti asserts that he and his family have been unfairly targeted for investigation by Missouri state authorities, citing, *inter alia*: a lawsuit brought by the Missouri Attorney General against Mr. Chaganti and Whispering Oaks, which Mr. Chaganti lost and is apparently now appealing; decisions by the Missouri Department of Health and Senior Services denying Whispering Oaks a license; denial of payments to Whispering Oaks by the Missouri Department of Social Services; state and federal tax audits of "all members of Mr. Chaganti's family and their businesses"; and a 2011 state criminal investigation of Mr. Chaganti for filing fraudulent invoices.[9] But this court has no information about these investigations, much less an ability to conclude that they constitute mitigating evidence of bias or mistreatment.

---

[9] Mr. Chaganti also vaguely complains of other harassment by state and local government officials, including: efforts by "[o]fficials of the Missouri government" to persuade a bank that loaned funds to Mr. Chaganti to foreclose on his property; efforts by the "Missouri government, in concert with county and city governments" to rezone Mr. Chaganti's property; a failure to protect his property from burglars; and threats to his employees by "[u]nknown persons, informed to be instigated by the Missouri government."

## D. Substantially Different Discipline

Lastly, Mr. Chaganti argues that, for the same misconduct, he would receive no discipline or different discipline in the District. We disagree that Mr. Chaganti would not have been disciplined here for contacting a represented party and threatening him with a new lawsuit involving his employer. Such conduct clearly violates our corresponding Rules of Professional Conduct, D.C. R. Prof. Conduct 4.2 and 8.4 (d).

The question is whether we would impose substantially different discipline for this conduct. The burden is on Mr. Chaganti to show both that the misconduct would have resulted in a different sanction here, and that the difference between our standard discipline and the discipline he received in Missouri is substantial. *Salo*, 48 A.3d at 178. Mr. Chaganti cites no cases to show that lesser discipline would have been imposed in this jurisdiction for his misconduct.[10] Accordingly,

---

[10] It appears that we have no cases discussing what discipline should be imposed, as an original matter, for contacting a represented party and making analogous intimidating and extortionary statements. But in *In re Ras*, 884 A.2d 44 (D.C. 2005), we imposed a one-year suspension as reciprocal discipline where another jurisdiction determined that the attorney had, *inter alia*, communicated with a represented party and threatened to pursue criminal charges to gain advantage in a civil matter.

Mr. Chaganti fails to carry the first part of his burden and cannot obtain relief under this exception.

### III.   Conclusion

For the foregoing reasons, Naren Chaganti is hereby suspended from the practice of law in the District of Columbia for one year, effective the date of this decision, with reinstatement conditioned upon proof of fitness to practice law.

*So ordered.*